591 N.E.2d 967 (1992)
228 Ill. App.3d 382
169 Ill.Dec. 463
Floyd R. McCLINTOCK, Plaintiff-Appellee,
v.
BI-STATE DEVELOPMENT AGENCY, Defendant-Appellant.
No. 5-91-0364.
Appellate Court of Illinois, Fifth District.
May 7, 1992.
*968 John L. McMullin, Beth Kamp Veath, Brown & James, P.C., St. Louis, Mo. and Belleville, for defendant-appellant.
Roger S. Murphy, Edwardsville, for plaintiff-appellee.
Justice HARRISON delivered the opinion of the court:
Defendant, Bi-State Development Agency (Bi-State), brings this permissive interlocutory appeal pursuant to Supreme Court Rule 308 (134 Ill.2d R. 308) from an order of the circuit court of St. Clair County which set aside a previous ruling that Bi-State was entitled to summary judgment because plaintiff had not complied with Section 8-102 of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill.Rev.Stat.1985, ch. 85, par. 8-102). The questions presented *969 for our consideration are: (1) whether plaintiff's action against Bi-State is subject to the provisions of section 8-102 (Ill.Rev. Stat.1985, ch. 85, par. 8-102), and (2) if so, whether the notice provided by plaintiff to Bi-State under that statute was so deficient that summary judgment should have been entered in Bi-State's favor. For the reasons which follow, we affirm.
Section 2-1005 of our Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-1005) provides that summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The materials on file in this case established that plaintiff, Floyd McClintock, was assaulted and injured by a Bi-State bus driver on the afternoon of September 21, 1982, during an altercation over how much bus fare he owed. Plaintiff was taken to a local hospital, police were summoned, and the bus driver was arrested. Thereafter, on September 20, 1984, plaintiff brought an action against Bi-State in the circuit court of St. Clair County to recover damages for his injuries.
Bi-State filed an answer and promptly initiated discovery. In 1987, it sought and obtained a change of judge, and in 1988, it asked for sanctions when plaintiff refused to answer its interrogatories. Discovery was subsequently completed, and the case was called for trial on June 1, 1989. At that time counsel for plaintiff appeared and announced that Bi-State would be obtaining new attorneys to represent it and that the "cause should be settled within 30 days."
That settlement never came. Instead, Bi-State's new lawyers filed a motion for leave to amend Bi-State's answer to include as an affirmative defense that plaintiff had failed to serve it with the notice required by section 8-102 of the Tort Immunity Act (Ill.Rev.Stat.1985, ch. 85, par. 8-102). Following various developments not relevant here, Bi-State's summary judgment motion was heard on October 19, 1989. Through inadvertence, however, plaintiff's attorney failed to appear at that hearing, and the circuit court granted summary judgment in favor of Bi-State.
When plaintiff's counsel discovered what had happened, he promptly moved for reconsideration, arguing, inter alia, that plaintiff had, in fact, supplied Bi-State with a notice which substantially complied with the requirements of section 8-102 of the Tort Immunity Act (Ill.Rev.Stat.1985, ch. 85, par. 8-102). In a supplemental submission to the court, plaintiff also argued, in the alternative, that the notice requirement of section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102) was inapplicable to his action against Bi-State.
Following a hearing, the circuit court granted plaintiff's motion for reconsideration, set aside its previous order granting summary judgment in favor of Bi-State, and scheduled the matter for trial. On Bi-State's motion, the circuit court subsequently made a written finding that its order setting aside the summary judgment involved questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The specific questions of law identified by the circuit court were whether the notice furnished by plaintiff to Bi-State complied with the requirements of section 8-102 of the Tort Immunity Act (Ill.Rev.Stat.1985, ch. 85, par. 8-102) and "whether this [notice] requirement applies to Bi-State Development Agency under the provisions of Ill.Rev. Stats. [sic] Chapter 85, Section 2-101." Bi-State filed an application with our court for leave to appeal pursuant to Supreme Court Rule 308 (134 Ill.2d R. 308). We granted that application and now affirm.
Section 8-102 of the Tort Immunity Act (Ill.Rev.Stat.1985, ch. 85, par. 8-102) provides that where, as here, a plaintiff seeks to bring a "civil action for damages on account of * * * injury against a local public entity," he must serve written notice on the local public entity of his intent to sue within one year of the date that the injury was received or the cause of action *970 accrued. Although that statute has now been repealed, the repeal is of no aid to plaintiff here, for it applies only to causes of action arising after November 25, 1986. (Heise v. Mitten (1991), 207 Ill.App.3d 941, 944-46, 152 Ill.Dec. 820, 822-23, 566 N.E.2d 507, 509-10; McGoughy v. Chicago Housing Authority (1989), 187 Ill.App.3d 412, 415, 135 Ill.Dec. 1, 2, 543 N.E.2d 236, 237.) In this case, there is no dispute that plaintiff's cause of action arose in September of 1982.
Plaintiff contends that the statute is nevertheless inapplicable as a matter of law by virtue of section 2-101(b) of the Tort Immunity Act (Ill.Rev.Stat.1985, ch. 85, par. 2-101(b)) because his cause of action seeks to impose liability on Bi-State based on its operation as a common carrier. This very argument was considered and rejected by our court in Cooper v. Bi-State Development Agency (1987), 158 Ill.App.3d 19, 24-26, 110 Ill.Dec. 257, 260-62, 510 N.E.2d 1288, 1291-93. Plaintiff now invites us to repudiate Cooper as having been wrongly decided. This invitation we shall decline.
Considerations of stare decisis weigh heavily in the area of statutory construction, especially where the legislature is free to change the court's interpretations of its legislation. (Williams v. Crickman (1980), 81 Ill.2d 105, 111, 39 Ill.Dec. 820, 823, 405 N.E.2d 799, 802.) Where it is clear that the court has made a mistake it will not decline to correct it, even though the court's holding may have been re-asserted and acquiesced in for a long number of years. (Maki v. Frelk (1968), 40 Ill.2d 193, 196, 239 N.E.2d 445, 447.) On the other hand, when a rule of law has once been settled, such rule ought to be followed unless it can be shown that serious detriment is thereby likely to arise which is prejudicial to the public interest. (O'Connor v. Schwindaman (1971), 131 Ill.App.2d 869, 872, 268 N.E.2d 455, 458.) With respect to Cooper, 158 Ill.App.3d 19, 110 Ill.Dec. 257, 510 N.E.2d 1288, plaintiff has made no such showing.
Under Cooper, Bi-State was entitled to the notice required by section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102). This leads us to the primary question posed by the circuit court's order, namely, whether the notice provided by plaintiff satisfied the statute's requirements. We believe that it did. Section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102) provides that an injured person who intends to bring a civil action for damages against a public entity
"must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any."
The primary purpose of this notice requirement is to furnish timely notice of injury so that a public entity can investigate and make prompt settlement of meritorious claims, and also to give notice to a public entity of possible liability so that budgetary provisions may be knowledgeably arranged. (Whitney v. City of Chicago (1987), 155 Ill.App.3d 714, 718, 108 Ill. Dec. 132, 135, 508 N.E.2d 293, 296.) As with the Tort Immunity Act itself, the notice requirement is in derogation of common law and must therefore be strictly construed against the local public entity (McGoughy v. Chicago Housing Authority (1989), 187 Ill.App.3d 412, 416, 135 Ill.Dec. 1, 3, 543 N.E.2d 236, 238) and liberally in favor of the injured party (Reese v. Village of Arlington Heights (1990), 204 Ill.App.3d 129, 132-34, 149 Ill.Dec. 460, 462-64, 561 N.E.2d 1156, 1158-60). Accordingly, this court has long recognized that rigid compliance with the statute is not required. Substantial compliance will suffice. (Grady v. Bi-State Development Agency (1986), 151 *971 Ill.App.3d 748, 751, 104 Ill.Dec. 427, 430, 502 N.E.2d 1087, 1090.) The test is whether the elements of the notice have been set forth with sufficient clarity and accuracy so as to not mislead or prejudice the public entity. (McGoughy v. Chicago Housing Authority (1989), 187 Ill.App.3d 412, 415, 135 Ill.Dec. 1, 3, 543 N.E.2d 236, 238; Reese v. Village of Arlington Heights (1990), 204 Ill.App.3d 129, 134, 149 Ill.Dec. 460, 464, 561 N.E.2d 1156, 1160.) Where no prejudice has occurred, the notice is sufficient. 204 Ill.App.3d at 134, 149 Ill. Dec. at 464, 561 N.E.2d at 1160.
In this case, the record showed that plaintiff's attorney sent a letter to Bi-State within one week of the attack. The letter stated:
"Please be advised that I have been retained to represent Floyd R. McClintock in his claim against you for personal injuries sustained in an accident on Bi-State Bus #8367 at 7400 West Main Street, Belleville, Illinois, at approximately 2:50 p.m., on September 21, 1982, when he was attacked by Kerney Falconer, the driver of the bus."
The letter further advised Bi-State that plaintiff's attorney was asserting a statutory attorney's lien, and it invited Bi-State to forward the letter to its insurance carrier if it was "desirous of an amicable settlement."
This letter unambiguously notified Bi-State of plaintiff's injury, and its clear import is that litigation would result if a settlement could not be reached. The notice was obviously in writing. It was signed by plaintiff's attorney. It gave the name of plaintiff, who was the person who was injured and "the person to whom the cause of action has accrued." It gave the date, time and place where the injury occurred. It also set forth the "general nature of the accident." It specifically says that plaintiff was attacked by the bus driver. It even furnished the driver's name.
The letter does fail to mention plaintiff's address. Bi-State has not explained, however, how this omission could possibly be prejudicial. The notice plainly states the address of plaintiff's attorney, and there is no dispute that the attorney could be easily reached to provide any additional details regarding plaintiff or the accident. In fact, the record showed that within 48 hours Bi-State forwarded the attorney's letter to one of its claims administrators, Fred S. James and Company of Missouri, and in a letter dated September 30, 1982, a claims representative contacted plaintiff's attorney on behalf of Bi-State to make just such a request. In that letter, the claims representative acknowledged receipt of the letter from plaintiff's attorney, indicated a desire to meet with plaintiff and the attorney in the attorney's office to take plaintiff's statement, and requested a copy of plaintiff's medical report and a list of "any other damages." From this letter, it does not appear that plaintiff's street address was an issue at all.
Other facts which were not included in plaintiff's notice were the "name and address of the attending physician, if any, and the name and address of the treating hospital, or hospitals, if any." We note, however, that plaintiff did not obtain any detailed examination, diagnosis, or treatment for his injury until the week after the notice was sent. Obviously, there is no way information regarding this care and treatment could have been included in the notice itself. It was not even yet available when Bi-State's claim administrator first wrote back in response to the notice. At the time the notice was sent, the only medical facility plaintiff had visited was the emergency room at Belleville Memorial Hospital, where he was taken immediately after he was attacked. The police report of the incident indicated that he refused treatment there. The hospital records disclosed that x-rays were taken of plaintiff's finger, the finger was examined, and ice was applied to it, but nothing else was done. Apparently, plaintiff simply became angered and walked out.
Even if we assume for the sake of argument that this visit to the emergency room was sufficient to make Belleville Memorial a "treating hospital" within the meaning of section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102) we fail to see, and Bi-State has not *972 explained, how omission of Belleville Memorial's name and address from the notice was in any way prejudicial. This information was readily ascertainable through direct inquiry to plaintiff's attorney, and as we have previously indicated, such inquiry was in fact made less than 10 days after plaintiff sustained his injuries. Moreover, the record is devoid of anything which would suggest in any way that the absence of this data in the initial notice impeded Bi-State's ability to investigate the incident, to plan its budget in light of prospective liability, to settle claims and avoid costly litigation, or to take corrective action against the bus driver involved so as to avoid similar injuries and liability in the future. See Grady v. Bi-State Development Agency (1986), 151 Ill.App.3d 748, 752, 104 Ill.Dec. 427, 430, 502 N.E.2d 1087, 1090 (Welch, J. dissenting).
Bi-State has thus failed to establish any basis for holding that the letter from plaintiff's attorney was insufficient to meet the substantive requirements of section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102). Bi-State argues that it was still entitled to summary judgment because the letter was not served in the precise manner specified by that statute. We disagree.
Section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102) provides that notices are to be served on a public entity's clerk or secretary by personal service or by registered or certified mail, return receipt requested. Admittedly, that procedure was not followed here. The letter was sent by regular mail and was not directed to Bi-State's clerk or secretary. It does not necessarily follow, however, that plaintiff's subsequent lawsuit should have been summarily dismissed.
The notice provision of section 8-102 (Ill.Rev.Stat.1985, ch. 85, par. 8-102) is not a condition precedent to the right to bring suit against a public entity. Rather, it is a limitation provision. The failure to comply with that provision is regarded as an affirmative defense which the public entity must raise to defeat the injured party's claim. (Smith v. County of White (1989), 191 Ill.App.3d 569, 573, 138 Ill.Dec. 789, 792, 548 N.E.2d 19, 22.) Through its acts or representations, a public entity may be barred from raising the defense by principles of estoppel. West v. Northeastern Illinois R.R. Corp. (1989), 180 Ill.App.3d 307, 313, 129 Ill.Dec. 222, 226, 535 N.E.2d 987, 991.
In this case, plaintiff followed his notice by bringing suit. Although he did not file his actual complaint until after the one-year statutory notice period had elapsed, there is no dispute that the action was timely. Upon receipt of plaintiff's complaint, Bi-State filed its answer and initiated discovery. Over the next five years it filed various motions in the case. Throughout that period, it made no mention of any possible problem with the initial notice. As we indicated at the outset of our disposition, that issue did not surface at all until after the case had already been called for trial, Bi-State had obtained substitute counsel, and plaintiff's attorney had advised the court that settlement was imminent. By that time, seven years had passed since Bi-State had first received the notice.
We acknowledge that there is authority for the proposition that filing an answer, engaging in discovery and undertaking settlement negotiations are not, by themselves, sufficient to preclude a public entity from raising an objection to the sufficiency of a statutory notice on the basis of either waiver or estoppel where, as here, the complaint itself was not served until after the end of the statutory notice period. (See Shortt v. City of Chicago (1987), 160 Ill. App.3d 933, 936, 112 Ill.Dec. 607, 609, 514 N.E.2d 3, 5; West v. Northeastern Illinois R.R. Corp. (1989), 180 Ill.App.3d 307, 313-14, 129 Ill.Dec. 222, 227, 535 N.E.2d 987, 992.) This case, however, plainly involves more than that.
Here, Bi-State, through its claims administrator, expressly acknowledged receipt of the notice in the letter it sent to plaintiff's attorney shortly after plaintiff was attacked. In making that acknowledgement, the claims administrator took no issue whatever with the mode of service. To the contrary, we believe that by proceeding to *973 request additional information from plaintiff's attorney regarding the substance of plaintiff's claim after the notice was received, the claims administrator implicitly represented that Bi-State regarded the notice as sufficient and that plaintiff's claim would be addressed on the merits. No reasonable person could possibly have suspected that Bi-State might continue to harbor any objection to the technical sufficiency of the notice or the manner in which it was served.
To allow Bi-State to insist on strict compliance with the statute's service requirements at this late date and under these circumstances would not only serve no legitimate purpose, it would be fundamentally unjust. As Justice Welch wrote in his dissenting opinion in Grady v. Bi-State Development Agency (1986), 151 Ill.App.3d 748, 752, 104 Ill.Dec. 427, 431, 502 N.E.2d 1087, 1091, it would merely consign "a presumptively valid claim to oblivion for technical reasons which have nothing to do with protecting defendant's rights or the public. Section 8-102 has a valid purpose and should be implemented to effect that purpose, not to trap unwary injured parties."
For the foregoing reasons, the judgment of the circuit court of St. Clair County granting plaintiff's motion to reconsider and denying Bi-State's summary judgment motion is affirmed and this case is remanded for further proceedings.
Affirmed and remanded.
GOLDENHERSH, P.J., and RARICK, J., concur.