# Henderson v. Delaware River Joint Toll Bridge Commission et al.

476

Argued May 23, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Lawrence Davis,* for plaintiff.

*T. McKeen Chidsey,* Counsel for the Commission and as Attorney General, with him *H. F. Stambaugh,* Special Counsel, *Robert M. Mountenay,* Assistant Deputy Attorney General, *John H. Pursel* and *Robie L. Mitchell,* for Delaware River Joint Toll Bridge Commission.

*E. Dillwin Darlington,* with him *Grim & Cadwallader,* for intervening plaintiffs.

*Willard S. Curtin,* Borough Solicitor, for Burgess and Town Council of Morrisville Borough, defendant.

*Coffin & Coffin,* for City of Easton, defendant.

OPINION BY MR. JUSTICE JONES, June 24, 1949:

This proceeding in equity is here on original jurisdiction. The plaintiff, Perce Henderson, a resident and taxpayer of the City of Easton, Pennsylvania, seeks to restrain and enjoin the Delaware River Joint Toll Bridge Commission (hereinafter referred to as the "Commission") from proceeding with a certain public project embracing bridge and bridge-approach construction and the financing thereof. Also joined as parties defendant are the City of Easton, Pennsylvania, and the Borough of Morrisville, Pennsylvania, whose correct corporate title is the Burgess and Town Council of the Borough of Morrisville.

The plaintiff filed an amended bill and the three named defendants filed separate answers. The answer of the City of Easton accords with the answer of the Commission, each of those defendants praying that the

complaint be dismissed. The defendant, Borough of Morrisville, in answering the bill and the amendment, allied itself with plaintiff Henderson, joining in the prayer of his complaint that the Commission be enjoined from proceeding with the project.

Subsequently, on petition, Herbert L. Hall, Jr., a property owner of the Borough of Morrisville, Neal Nolan, a taxpayer of the Borough, Rednor and Klein, Inc., a corporation doing business in that Borough, and the Burgess and Town Council of the Borough of Morrisville (one of the defendants) were, by order of this Court, permitted to intervene as parties plaintiff.

None of the facts material to an adjudication of the questions raised by the complainants is in dispute. All such facts appear of record either by express admissions or insufficient denials of the averments of the pleadings or by stipulation of all parties.

The Commission is a body corporate and politic created by a compact entered into by the Commonwealth of Pennsylvania and the State of New Jersey pursuant to authority conferred by the respective legislatures of said States,[1] consent whereto was duly given by the Congress of the United States.[2] By the terms of the compact, the Commission was declared to be "the public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey for the following public purposes, and shall be deemed to be exercising an essential governmental function in effectuating such purpose", to wit, the construction, operation and maintenance of bridge communications over the Delaware River, north of the present stone arch bridge of the Pennsylvania Railroad at Trenton, and the

---

[1] Pennsylvania Act of June 25, 1931, P. L. 1352, as amended by the Act of May 18, 1933, P. L. 827, and New Jersey Statute, Chapter 215 Laws of 1934.

[2] Section 9 of Act of Congress of August 30, 1935, 49 Stat. 1051, 1058.

issuance of bonds to provide moneys sufficient for the construction, operation and maintenance of such bridges, the bonds to be redeemed and the interest thereon paid by receipts from the collection of tolls charged for the use of such bridge communications.

The defendant City of Easton is a third class city of Pennsylvania, situate on the west bank of the Delaware River opposite the Town of Phillipsburg, New Jersey. The defendant Borough of Morrisville is a borough of Pennsylvania, situate on the west bank of the Delaware River opposite the City of Trenton, New Jersey.

Under the authority and terms of the above-mentioned compact, the Commission constructed a bridge across the Delaware River between the City of Easton and the Town of Phillipsburg, known as the "Easton-Phillipsburg Bridge", through the issuance of revenue bonds which were subsequently refunded by an issue of bonds, in part, still outstanding.

By a supplemental compact, entered into by the Commonwealth of Pennsylvania and the State of New Jersey, under legislative authority enacted by the respective legislatures of said States,[3] to which the consent of Congress was duly given,[4] the Commission was authorized to construct, operate and maintain bridges across the Delaware River, bridge approaches, bridge plazas or approach highways to any such bridge or bridges, to issue its revenue bonds (a) for the purpose of borrowing moneys necessary for such construction of bridges and approaches thereto and (b) for refunding any outstanding bonds theretofore issued by the Commission; any such issuance of bonds to be considered a single project for financing purposes, the bonds so issued to be re-

---

[3] Pennsylvania Act of June 13, 1947, P. L. 592, and New Jersey Statute, Chapter 283, Laws of 1947.

[4] Act of Congress of August 4, 1947, 61 Stat. 752.

deemed and the interest thereon paid out of tolls collected from charges made for the use of any such bridge or bridges included in such project.

Pursuant to the original and supplemental compacts hereinabove referred to, the Commission proposes to construct as a single project a new bridge between Morrisville, Pennsylvania, and Trenton, New Jersey, to connect with the free highway now being constructed in New Jersey through Trenton, with the necessary approaches on the Pennsylvania and New Jersey sides, and to build a new and adequate approach to the Easton-Phillipsburg Bridge on the Pennsylvania side, to issue revenue bonds to pay the cost thereof and to refund the bonds heretofore issued and still outstanding on account of the construction of the Easton-Phillipsburg Bridge, such new bonds to be redeemed and the interest thereon to be paid out of tolls collected for traffic on both the proposed Morrisville-Trenton and the existing Easton-Phillipsburg Bridges.

Article III of the original compact authorized the Commission to acquire by purchase or by condemnation any real estate, in fee simple or a lesser interest, whether or not such property had theretofore been taken for, or was then devoted to, a public use including real property of either said Commonwealth or said State with special reference to lands lying under water and lands devoted to public use. The same article further provided that "no property, now or hereafter vested in or held by any . . . city, borough, . . . or other municipality, shall be taken by the commission without the consent of such municipality, *unless expressly authorized so to do by the Commonwealth or State in which such municipality is located. . . .*". (Emphasis supplied.) By paragraph (d) of Article X of the supplemental compact it is provided that "The commission may enter upon, use, occupy, . . . any street, road or highway, located within the limits of any municipality, and

deemed by the commission to be necessary in connection with the . . . construction, . . . maintenance or operation, of any bridge, owned or operated by the commission, or of any bridge approaches, bridge plazas, or approach highways to any such bridge, subject however to the consent of the governing body of such municipality, . . ."

The proposed approach to the Easton-Phillipsburg Bridge at the Easton end requires the occupation of various streets located within the limits of that City; and, at the request of the Commission, the council of said City duly passed a resolution granting consent to the occupation of said streets in Easton by the Commission for the bridge approach. The Borough of Morrisville, however, refused its consent to the occupation of any of its streets by the Commission; and, as a consequence, the Commission, in accordance with detailed engineering plans which it adopted, proposes, for the purpose of an approach to the Morrisville-Trenton Bridge, to cross streets in Morrisville by overpasses without actually occupying the said streets which will remain open for all public uses.

The Commission, relying upon the formal consent resolution of the council of the City of Easton to the occupation of its streets and alleging that no consent of the Borough of Morrisville was requisite to the crossing of said Borough's streets by the overpasses abovementioned, authorized the issuance of bridge revenue bonds to cover the cost of said project and the refunding of outstanding bonds and is about to proceed with the construction of the project. The plaintiff complains that, if the construction of the Easton approach be proceeded with, he will suffer an increased tax burden through the loss of revenues by both the City of Easton and the Easton School District from other heretofore taxable properties to be acquired by the Commission for use in the bridge approach. The plaintiff contends that

the Commission is without authority to occupy the streets of the City of Easton for its bridge approach under the resolution passed by the City council but that an ordinance to that end is required under Section 1057 of the Third Class City Law of June 23, 1931, P. L. 932 (53 PS 12198-1057) and that thereby a referendum on such an ordinance to the electorate of the City of Easton would be permissible by virtue of Section 1058 et seq. of the Third Class City Law, cit. supra. The plaintiff further contends that the Commission is not authorized to build the proposed overpasses crossing the streets of the Borough of Morrisville without the consent of the council of that Borough. The defendant, Borough of Morrisville, joins in that contention as do also the other intervening plaintiffs.

By stipulation, joined in by counsel for all of the parties to the record, it is agreed that portions of five streets of the Borough of Morrisville will be overpassed by the proposed bridge approach; that the title in fee to four of the streets so to be overpassed is in the private abutting owners subject to the use of the surface thereof as public highways; that a deed to the Borough for the bed of the fifth street to be overpassed was not recorded until after deeds to private vendees of land abutting on the portion of that street had been recorded. It is the plaintiff's contention that in the absence of proof that that street was open at the time of the prior recording of the deeds of the abutting property owners (which by their descriptions referred to the sides of that street as boundaries), such owners did not acquire title to any part of the street but the title thereto passed to and is in the Borough under its deed therefor. It is the Commission's contention that the abutting owners acquired title to the middle of the street because it was dedicated to public use by the prior recording of a plan of lots designating the street and the abutting properties in relation thereto, to which plan the deed to the Borough

and all of the deeds to the abutting property owners expressly refer; that the abutting owners acquired title to the bed of the one street in question; and that the Commission may acquire through condemnation the right to overpass that street as well as all of the other four streets where the reversionary interest in the portions to be overpassed concededly is in the abutting owners.

After all of the pleadings in the instant suit had been completed, the Pennsylvania General Assembly of 1949 passed an Act, No. 35, which became effective upon approval by the Governor on March 31, 1949. That Act purports to eliminate the necessity of the Commission's obtaining municipal consent to the occupation or overpassing of streets of a municipality in furtherance of the construction of a Commission project. The Commission thereupon filed an amended answer, setting up the Act of 1949, supra, as conclusive of the issues, here involved, adversely to the plaintiffs. The Borough of Morrisville filed a reply to the Commission's amended answer wherein the Borough alleged that Act No. 35 is void and of no effect because it undertakes to change the terms of the compacts without the approval of the State of New Jersey and the Congress of the United States. The original plaintiff and the remaining intervenors did not file replies to the Commission's amended answer but joined in the allegation of the Borough of Morrisville in such regard.

The plaintiff poses, as the questions involved, the following: (1) Was the consent of the City of Easton to the Commission's occupation of its streets for bridge-approach purposes sufficiently given by the resolution passed by the City council and was it not required to be given by ordinance on which a referendum to the electorate would lie? (2) The Borough of Morrisville having refused its consent to the Commission's occupation of its streets for bridge-approach purposes, can the

Commission, within the authority of the compacts, overpass said streets, the use whereof as highways will be unaffected thereby? (3) Is the Pennsylvania Act of Assembly, No. 35, approved March 31, 1949, which eliminates the necessity of the Commission's obtaining consent to its occupancy or overpassing of the streets of a Pennsylvania municipality invalid as altering the compacts between Pennsylvania and New Jersey without the consent of the latter or of the Congress of the United States?

To these, the intervenors add several more questions, only one of which needs be noticed, viz., Does the Pennsylvania Act of Assembly, No. 35, approved March 31, 1949, constitute local and special legislation in violation of Article III, Section 7, of the Constitution of Pennsylvania? The remaining questions stated by the intervenors, exclusive of those stated by the plaintiff as hereinbefore given, involve assumptions of fact not in accordance with the record, namely, that the Commission intends "to close and fill in" the streets in Morrisville which it proposes to overpass. As already stated, the bill of complaint avers, ". . . the approach . . ., in accordance with detailed engineering plans adopted by the Commission, will cross said streets in the said Borough of Morrisville by overpasses but not actually occupy the said streets which will remain open for all public uses." Such questions need not, therefore, be considered.

Preliminarily, there is no relevancy in the intervenors' contention that the compacts could be amended only by an Act of Congress. Act No. 35 is not an amendment of the compacts, as we shall hereinafter see. But, in any event, an amendment thereof would be a matter for the contracting States subject, of course, to the congressional consent required by Article I, Sec. 10, cl. 3, of the Constitution of the United States, just as was

done in the case of the supplemental compact. The granting of the required congressional consent did not serve, as the intervenors argue, to make the compacts laws of the United States. They remained what they had been before congressional approval was accorded them, namely, statutorily evidenced agreements between the two contracting States. The inhibition of Article I, Sec. 10, cl. 3, of the Constitution that "No State shall, without the Consent of Congress . . . enter into any Agreement or Compact with another State . . ." presupposes *State* action in the premises. And, while consent of Congress is required in the circumstances to validate the State action, it continues, nonetheless, to be State action. In *People v. Central Railroad,* 79 U. S. (12 Wall.) 455, 456, it was held that the consent of Congress to a compact between States did not make the compact a statute of the United States so as to justify a writ of error to a State court on the ground that a *statute* of the United States was thereby drawn in question. Nor does the case of *Delaware River Joint Toll Bridge Commission v. Colburn,* 310 U. S. 419, which the intervenors cite, derogate from the principle presently pertinent. It is true that in the *Colburn* case the ruling in *People v. Central Railroad,* supra, was modified to the extent that jurisdiction of a case involving a compact between States was taken on certiorari by the United States Supreme Court, *not,* however, because a *statute* of the United States was thus drawn in question, but because the congressional sanction of the compact under Article I, Sec. 10, cl. 3, of the Constitution "involves a federal 'title, right, privilege or immunity' " which, when set up in a State court, may be reviewed by the Supreme Court on certiorari by virtue of Section 237(b) of the Judicial Code, 28 USCA §344.

Inasmuch as the Pennsylvania Act No. 35 of 1949, if valid and competent in the circumstances, effectively disposes of the plaintiffs' contentions, we shall at once

address ourselves to the argument that the statute is invalid and of no effect.

Act No. 35 does not constitute an alteration or amendment of the compacts so as to require the consent of either New Jersey or Congress to its statutory provisions. Congressional consent is not necessary to every step taken by a State in an effort to carry out a duly approved compact with another State. In *Virginia v. Tennessee,* 148 U. S. 503, 519, Mr. Justice FIELD, speaking for the Supreme Court, said,—"Looking at the clause [of the Constitution, Article I, Sec. 10, cl. 3] in which the terms 'compact' or 'agreement' appear, it is evident that the prohibition is directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States." And, in *Stearns v. Minnesota,* 179 U. S. 223, 246, where the doctrine of *Virginia v. Tennessee,* supra, was approved, Mr. Justice BREWER said that ". . . in the opinion in that case it was intimated that there were many matters in respect to which the different States might agree without formal consent of Congress." We cite these authorities merely to show that congressional consent is not slavishly required in respect of each and every matter relating to or growing out of a congressionally approved "compact" or "agreement" between States.

In the present instance, Act No. 35 is in no way in derogation of anything contained in the original and supplemental compacts to which both New Jersey and Congress have assented. Actually, the statute is in aid of the Commonwealth's expeditious fulfillment of its undertakings in the compacts. The provisions of Act No. 35 do not tend to increase the political power of the contracting States in encroachment upon or interference with the just supremacy of the United States. Congress is therefore not concerned with the legislative implementation which Pennsylvania has adopted in

order to execute fully and faithfully its undertakings in the compacts which already have congressional approval.

Nor is there any occasion to secure New Jersey's formal statutory consent to Pennsylvania's Act No. 35. Article III of the original compact, to which New Jersey subscribed, contemplated that the Commission might secure authority from the Commonwealth of Pennsylvania or the State of New Jersey to appropriate property of a municipality by virtue of the power of eminent domain. Thus, Article III prohibited the Commission's taking municipal property without the consent of the municipality "unless expressly authorized so to do by the Commonwealth or State in which such municipality is located." To this, also, the consent of Congress attached. It is evident, therefore, that all that Act No. 35 does in such regard is to empower the Commission to appropriate municipal property, without obtaining the municipality's consent, in fulfillment of the possible power so to do as anticipated by Article III of the original compact. No right of the State of New Jersey nor any of its citizens is affected adversely by the provisions of Act No. 35. And, neither the plaintiffs nor any owners of property to be condemned by the Commission for the construction of the project have any standing to object that New Jersey has not formally consented to Act No. 35. Incidentally, while New Jersey is understandably not a party to the record in the instant proceeding, the Attorney General of that State appeared at bar upon the oral argument of this case and expressly associated himself with all that the Attorney General of Pennsylvania had said in support of the Commonwealth's action (including Act No. 35) designed to carry out the terms and intendment of the compacts.

Of necessity, Pennsylvania acted unilaterally in the matter, but she was, nonetheless, well within her rights in further empowering the Commission so as to enable it, with respect to matters within this State's jurisdic-

tion, to perform adequately and completely the purposes of the Commission's creation. It is within the competency of a State, which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact. See *Olin v. Kitzmiller*, 259 U. S. 260, 263, affirming the same case as reported in 268 Fed. 348 (C. C. A. 9) ; also *P. J. McGowan & Sons, Inc., v. Van Winkle*, 21 F. 2d 76 (U. S. D. C. D. O.), affirmed by the Supreme Court in 277 U. S. 574 in a memorandum opinion ". . . on the authority of *Olin v. Kitzmiller*, 259 U. S. 260, 263."

Pennsylvania's exercise of her legislative power in material regard was not in the least restricted by reason of any vested municipal rights in the municipalities concerned or in their inhabitants. In *Pittsburg's Petition*, 217 Pa. 227, 238, 66 A. 348, which sustained, as valid, a statute looking to the consolidation of the cities of Pittsburgh and Allegheny, Mr. Justice BROWN, for this Court, quoted with approval from *Philadelphia v. Fox*, 64 Pa. 169, to the effect that,—" 'It follows under the law of the land, that neither the municipality as such, or any of the persons residing therein, have any vested rights to the municipal powers, as against the state which created the municipality. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—subject to legislative control "which may destroy its very existence with the mere breath of arbitrary decision". . . .' " *Pittsburg's Petition*, supra, was affirmed by the Supreme Court of the United States sub nom. *Hunter v. City of Pittsburgh*, 207 U. S. 161, 178-179, where it was further observed that "Neither their charters [i. e., of municipal corporations], nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such

property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation." See, also, *City of Pawhuska v. Pawhuska Oil & Gas Company*, 250 U. S. 394, 397-398. The present plaintiffs are consequently without standing to complain of the substantive provisions of Act No. 35 which delimit *pro tanto* in pertinent relation the powers of the municipalities subject to the Commission's exercise of its authority.

Furthermore, Act No. 35 is not violative of the State constitutional prohibition (Art. III, Sec. 7) against the passage of local or special laws. So far as the bridges, here involved, and their locations are concerned, little more need be said in regard to the intervenors' contention in this connection than to point out that the same constitutional provision expressly excepts from its inhibition laws relating to ". . . the erection of bridges crossing streams which form boundaries between this and any other State." And, of course, such is the very nature of the bridges which, together with their necessary approaches, the Commission was created to construct and operate. Indeed, in the light of the particular river to be spanned and the arteries of travel on either side to be joined, the undertaking could not be otherwise than local in its setting. Yet, the Act is general in its terms and scope and that satisfies the constitutional intendment. What Mr. Justice BROWN said in *Pittsburg's Petition,* supra, with reference to the consolidation statute, which was there upheld, is peculiarly apposite here, viz., "That [the Act] applies now, and for the present can apply, only

to the cities of Pittsburg and Allegheny, and that it was passed for them, can make no difference if the legislation is general in form and substance, and is not within the prohibition of the constitution: Wheeler v. Philadelphia, 77 Pa. 338." Nor is Act No. 35 local or special in its authorization to the Commission to enter upon streets and highways. Such legislative procedure has long been sustained as being not in violation of the local and special law prohibition of the State Constitution, for, while such highways are necessarily "local so far as the situation of any portion is concerned, . . . each as a whole may be considered state wide, for it is built and maintained for the use and benefit of all the people of the State and its location is merely incidental to the great system of which it forms a part; . . .": *State Highway Commissioner v. Chambersburg & Bedford Turnpike Co.*, 242 Pa. 171, 174, 88 A. 938. In that case the Highway Act of May 31, 1911, which authorized the Highway Department to purchase or condemn any turnpike or toll road forming part of a State highway was attacked as being local and special legislation. The contention was rejected by this Court in an opinion by Mr. Justice MOSCHZISKER from which the above quotation is taken.

It follows from what we have said that the Pennsylvania Act No. 35 of 1949 is a valid, appropriate and effective exercise of the Commonwealth's legislative power and, being dispositive of the plaintiffs' contentions in their entirety, it is an end of the matter. We need not, therefore, consider or discuss the remaining questions raised by the plaintiffs in their original briefs as to the sufficiency of the consent formally given by the City of Easton's "governing body" (i. e., Council) to the Commission's use and occupation of certain streets of that City for an approach to the Easton-Phillipsburg Bridge and as to the right of the Commission, under the compacts, to overpass certain streets

of the Borough of Morrisville, without interfering with the public use of such streets, for the construction and maintenance of the necessary approach to the proposed Morrisville-Trenton Bridge at its Pennsylvania end. It is sufficient to say in conclusion that we find no merit in those contentions.

The additional questions now belatedly raised in the supplemental brief just filed by counsel for the intervening personal plaintiffs bring nothing new or material to the case. This Court has jurisdiction of the matter and the presence of federal questions does not operate to defeat it. Nor are the intervenors, being such, in position to question this Court's jurisdiction of a proceeding to which they voluntarily submitted themselves ostensibly in aid of the original plaintiff's effort to obtain the relief sought: see 20 Ruling Case Law §31, p. 692. The intervention was necessarily "in subordination to and in recognition of the propriety of [the] suit": Equity Rule 25.

Bill dismissed at plaintiffs' costs.