**Gregory F. KOTERBA**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 24, 1998.
Decided Aug. 26, 1999.

---

Timothy P. Wile, Asst. Counsel In-Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Charles T. DeTulleo, West Chester, for appellee.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

LEADBETTER, Judge.

The Department of Transportation, Bureau of Driver Licensing appeals from an order of the Court of Common Pleas of Chester County sustaining the appeal of

Gregory Koterba from a one year suspension of his operating privilege. We reverse.

Pursuant to the Driver's License Compact (Compact), 75 Pa.C.S. § 1581,[1] the Department suspended Koterba's operating privilege for one year after it received notice via electronic transmission from the New Jersey Division of Motor Vehicles that Koterba had been convicted in New Jersey, on September 2, 1997, of operating a motor vehicle while under the influence of intoxicating liquor under N.J. Stat. § 39:4–50(a).[2] Koterba appealed. At the hearing before the trial court, the Department introduced several documents, including a certified copy of the New Jersey conviction report, which the court admitted into evidence. The conviction report sets forth, *inter alia*, the New Jersey statute Koterba violated ("39:004–050A") and a description of the conduct that led to his conviction ("operate under influence liq/drugs"). Koterba did not testify at the hearing. The trial court sustained Koterba's appeal, concluding that the Department failed to prove that Koterba's New Jersey conviction is substantially similar to a driving under the influence (DUI) conviction in Pennsylvania. The Department appealed to this court.

█ The Department argues that the New Jersey and Pennsylvania DUI statutes are substantially similar within the meaning of the Compact and that it met its

burden. Based on our recent holding in the case of *Scott v. Department of Transp., Bureau of Driver Licensing,* 730 A.2d 539 (Pa.Cmwlth.1999), we agree. Because this case is controlled by *Scott,* we reverse the order of the trial court.

Koterba asserts a number of alternate grounds upon which this court should affirm the order of the trial court. We do not find any of the arguments persuasive, although the first presents a question of first impression relating to federal constitutional law.

Koterba's first argument is based upon the compact clause of the United States Constitution, which provides:

No state shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

U.S. Const. Art. I, Section 10.

In 1958, Congress authorized the states to enter into a compact for the purpose of promoting safe driving on their respective highways. Pub.L. No. 85–684, U.S. Statutes at Large, Vol. 72. *See* 23 U.S.C. § 313. This legislation was repealed, however, in 1966.[3] Various states joined the Compact before enactment of the federal legislation,[4] while it was in effect[5], and

---

1. Article III of the Compact provides in part that "[t]he licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee." 75 Pa.C.S. § 1581. Article IV of the Compact requires the home state, for purposes of license suspensions or revocations, to give the same effect to the conduct reported under Article III that would be given if the conduct had occurred in the home state. *Id.*

2. N.J. Stat. § 39:4–50(a) provides:
 (a) A person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration

of 0.10% or more by weight of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood, shall be subject [to penalties as set forth herein].

3. Pub.L. 89–564, Title I, § 102(a), Sept. 9, 1966, 80 Stat. 734.

4. *See, e.g.,* Del.Code Tit. 21, § 8101 enacted in 1953. As the Supreme Court noted early in our history, "[t]he constitution does not state

after its repeal[6]. Pennsylvania purported to join the Compact in 1995, but did not lawfully do so until 1996. *See Sullivan v. Department of Transp., Bureau of Driver Licensing,* 550 Pa. 639, 708 A.2d 481 (1998). The question presented, then, is the effect of repeal of the federal statute. Koterba argues that pursuant to the compact clause, the Driver's License Compact became unenforceable after the repealer.

■ The power of Congress to subsequently alter, amend or repeal its consent to an interstate compact is far from clear. At least two federal circuits have expressed doubt whether Congress has such power, but have refrained, expressing reluctance to decide, unnecessarily, an issue of such far-reaching consequences. *See Tobin v. United States,* 306 F.2d 270, 273 (D.C.Cir.), *cert. denied,* 371 U.S. 902, 83 S.Ct. 206, 9 L.Ed.2d 165 (1962); *Mineo v. Port Auth. of New York and New Jersey,* 779 F.2d 939, 948 (3d Cir.1985), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986). We need not rush in, however, where the third and D.C. circuits are reluctant to tread. While federal enabling legislation may be a prerequisite to those interstate compacts included within the meaning of the compact clause, it is not a prerequisite to all agreements between or among states, despite the comprehensive language of the constitution. It has long been held that, "There are many matters upon which different states may agree that can in no respect concern the United States." *Virginia v. Tennes-*

*see,* 148 U.S. 503, 518, 13 S.Ct. 728, 37 L.Ed. 537 (1893). We must determine whether the Driver's License Compact is such a matter.

First, the fact that Congress enacted legislation approving compacts of this sort does not mandate the conclusion that such approval was constitutionally necessary.[7] As the Supreme Court noted in *United States Steel Corp. v. Multistate Tax Commission,* 434 U.S. 452, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978), "[i]t is true that most multilateral compacts have been submitted for congressional approval. But this historical practice, which may simply reflect considerations of caution and convenience on the part of the submitting States, is not controlling." *Id.* at 471, 98 S.Ct. 799. Instead, we must look to the substance and potential effect of the agreement itself. The standard by which we measure the applicability of the compact clause to interstate agreements was first articulated by the Supreme Court in *Virginia v. Tennessee,* 148 U.S. 503, 13 S.Ct. 728, 37 L.Ed. 537.

> Looking at the clause in which the terms "compact" or "agreement" appear, it is evident that the prohibition is directed to the formation of any combination tending to the increase of political power in the states, which may encroach upon or interfere with the just supremacy of the United States.

*Id.* at 519, 13 S.Ct. 728. This standard has been repeated and applied throughout the

---

when the consent of congress shall be given, whether it shall precede or may follow the compact made, or whether it shall be express or may be implied." *Virginia v. Tennessee,* 148 U.S. 503, 521, 13 S.Ct. 728, 37 L.Ed. 537 (1893).

5. West's Ann. Cal. Vehicle Code, § 15000 et seq. enacted in 1963; N.Y. Veh. & Traf. Law § 516 (McKinney 1999), enacted in 1965 and amended in 1966, 1986, 1988.

6. D.C.Code § 8101, enacted March 16, 1985; S.C.Code §§ 56–1–620, 56–1–690, enacted in 1987; VA Code § 46.2–483, enacted in 1968.

7. Congressional approval, whether or not required by the compact clause, carries with it additional significance not in issue here. "[W]here Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law ...", *Cuyler v. Adams,* 449 U.S. 433, 440, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), and triggers the doctrine of preemption. *West Virginia, ex rel. Dyer v. Sims,* 341 U.S. 22, 28, 71 S.Ct. 557, 95 L.Ed. 713 (1951). *See also Texas v. New Mexico,* 462 U.S. 554, 564, 103 S.Ct. 2558, 77 L.Ed.2d 1 (1983).

following century. *See, e.g., New Hampshire v. Maine,* 426 U.S. 363, 369, 96 S.Ct. 2113, 48 L.Ed.2d 701 (1976). Moreover, as Justice Frankfurter stated in *New York v. O'Neill,* 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959):

> The Constitution of the United States does not preclude resourcefulness of relationships between States on matters as to which there is no grant of power to Congress and as to which the range of authority restricted within an individual State is inadequate. By reciprocal, voluntary legislation the States have invented methods to accomplish fruitful and unprohibited ends.

*Id.* at 11, 79 S.Ct. 564.

In *Multistate Tax Commission,* a case similar in many respects to this, the Court examined the Multistate Tax Compact, which created a joint commission for the purposes of, *inter alia,* apportioning tax liability of multistate taxpayers, promoting uniformity and compatibility in state tax systems, and avoiding duplicative taxation. In determining that this Tax Compact did not enhance state power at the expense of federal supremacy, the Court noted that the agreement did not purport "[t]o authorize member states to exercise any powers they could not exercise in its absence." 434 U.S. at 473, 98 S.Ct. 799. The Court noted further that there was no delegation of sovereign power by the individual states to a multi-state body, but in fact each state retained freedom to adopt its own rules and to withdraw from the compact at any time. *Id.* Finding nothing in the Tax Compact beyond the powers of the individual states nor creating a potential to encroach upon federal prerogatives, the

Court upheld its validity in the absence of congressional approval.

As one commentator has noted, courts have routinely found congressional consent to be unnecessary where the subject matter of the agreement is one over which the states have historically exercised control. *See* Jill Elaine Hasday, *Interstate Compacts in a Democratic Society: The Problem of Permanency,* 49 Fla.L.Rev. 1 (1997). In addition to the compact involved in *Multistate Tax Commission,* Hasday cites examples including the Uniform Law to Secure the Attendance of Witnesses from Within or Without the State in Criminal Proceedings,[8] the Interstate Compact on Placement of Children,[9] and the Uniform Reciprocal Enforcement of Child Support Act,[10] *Id.* at 39, N. 159. This list, while not comprehensive is illustrative, and telling.

■ Applying these principles, we conclude without hesitation that the Driver's License Compact is not the sort of interstate agreement for which the compact clause mandates congressional approval.[11] Neither the sharing of information among states regarding serious motor vehicle offense convictions nor the regulation by each individual state of the driving privileges of its own citizens threatens the supremacy of the United States. Indeed, the issuance [and denial] of driver's licenses is a function traditionally exercised by the individual state governments. Further, by joining the Compact, the member states have exercised no power that they could not exercise independently. There can be no question of the authority of any member state to decree that a driver's

---

8. Fla. Stat. 957, §§ 942.01–942.06, reviewed in *New York v. O'Neill,* 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959).

9. Act of June 13, 1967, P.L. 31, § 761, 62 P.S. § 761, discussed in *McComb v. Wambaugh,* 934 F.2d 474 (3d Cir.1991).

10. R.I. Gen. Laws §§ 15–11–1 through 15–11–42, reviewed in *Fraser v. Fraser,* 415 A.2d 1304 (R.I.1980).

11. We note that the Supreme Court of Missouri has reached the same conclusion with respect to a similar interstate agreement [regarding noncompliance with out of state traffic citations]. *Missouri v. Kurt,* 802 S.W.2d 954 (1991).

license it has issued shall be suspended if the licensee is convicted of a serious motor vehicle offense either within or outside its boarders. No state has ceded any of its sovereign powers. Accordingly, since the Driver's License Compact is a valid exercise of state power absent congressional approval, the effect of the repeal of 23 U.S.C. § 313 is irrelevant to the enforceability of the Compact as a matter of state law.

The remaining issues raised do not require extended discussion. Koterba argues that Pennsylvania has not properly entered the Compact. This issue was settled by the Pennsylvania Supreme Court in *Sullivan* (concluding that the action of the Secretary of Transportation purporting to enter the Compact on behalf of the Commonwealth was ineffective, but that the Legislature's passage of 75 Pa.C.S. § 1581 effected a proper entry into the Compact).

Third, Koterba contends that the trial court improperly admitted the New Jersey conviction report in violation of the requirements of Section 5328(a) of the Uniform Interstate and International Procedure Act (Act), 42 Pa.C.S. § 5328(a),[12] and therefore, there is no evidence to establish his conviction. We disagree. As we stated in *Mackall v. Department of Transp., Bureau of Driver Licensing*, 680 A.2d 31, 34 (Pa.Cmwlth.1996), the Legislature "relaxe[d] the evidentiary rules set forth in Section 5328(a) of the Act" and "lessened the Department's burden" in Compact cases by adding subsection (d) to Section 1550 of the Vehicle Code (Code). Section 1550(d) provides:

> Out-of-State documentation—In any proceeding under this section, documents received by the department from the courts or administrative bodies of other states or the Federal Government shall be admissible into evidence to support the department's case. In addition, the department may treat the received documents as documents of the department and use any of the methods of storage permitted under the provisions of 42 Pa.C.S. § 6109 (relating to photographic copies of business and public records), and may reproduce such documents in accordance with the provisions of 42 Pa.C.S. § 6103 (relating to proof of official records). In addition, if the department receives information from courts or administrative bodies of other states or the Federal Government by means of electronic transmission, it may certify that it has received the information by means of electronic transmission and that certification shall be prima facie proof of the adjudication and facts contained in such an electronic transmission.

75 Pa.C.S. § 1550(d), *as amended.* In *Mackall,* this court affirmed the admissibility of documents received by the Department from another state because the documents were certified under seal, pursuant to Section 1550(d) of the Code, by the Secretary of Transportation and the Director of the Bureau of Driver Licensing. In so affirming, we stated that under Section 1550(d), the Department may treat documents it receives from a member state as documents of the Department, including reproducing the documents and submitting them under the Department's seal to an adjudicatory body. 680 A.2d at 34. Here, the New Jersey conviction report was certified under seal by the Secretary of

---

**12.** Section 5328(a) of the Act provides:

> **Domestic record.**—An official record kept within the United States, or any state ... when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

42 Pa.C.S. § 5328(a).

Transportation and the Bureau Director. Thus, under Section 1550(d) and *Mackall,* the trial court properly admitted the report, and the unrebutted certifications of the Secretary and Director constitute proof of Koterba's New Jersey conviction.

 Finally, we reject Koterba's argument that because the language of the Compact adopted by the different states is not identical, there is no legal agreement between the states. Koterba cites no authority and we have found no authority for such a proposition. Even if there were no "agreement" as a matter of contract law, 75 Pa.C.S. § 1581 is an enforceable state statute for the reasons discussed above.

Accordingly, we reverse the order of the trial court.

## *O R D E R*

AND NOW, this 26th day of August, 1999, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby reversed and suspension reinstated.