809 A.2d 247

**Matthew J. WROBLEWSKI, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2001.

Decided Oct. 22, 2002.

Philip B. Friedman, Erie, for appellant.

Timothy Peter Wile, Harrisburg, for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, and SAYLOR, JJ.

## OPINION

Justice CAPPY.

In this appeal, we address the validity of a driver license suspension under the Driver's License Compact ("Compact"), 75 Pa.C.S. § 1581, and the effect of the legislature's passage of 75 Pa.C.S. § 1586. For the reasons herein, we affirm.

On August 12, 1999, Appellant Matthew Wroblewski was convicted of the New York offense of driving while ability impaired ("DWAI"), N.Y. Veh. & Traf. Law § 1192(1).[1] As both New York and Pennsylvania are parties to the Compact, authorities in New York reported the conviction to the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (hereinafter "Appellee" or "Penn-DOT"). *See* 75 Pa.C.S. § 1581, Art. III. Pursuant to Article IV(a)(2), when a party state reports a conviction for "driving a motor vehicle while under the influence of intoxicating liquor ... to a degree which renders the driver incapable of safely driving a motor vehicle," PennDOT must give the same effect to the out-of-state conviction as it would if that conduct had occurred within Pennsylvania. 75 Pa.C.S. § 1581, Art. IV(a) [2];

---

**1.** That statute provides in pertinent part as follows: "No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." N.Y. Veh. & Traf. Law. § 1192(1). The record does not reflect Appellant's conviction of this particular provision, but the litigants agree that this was the statute Appellant violated.

**2.** Article IV provides in relevant part:

(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:

* * *

(2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to

*Petrovick v. Com., Dept. of Transp., Bureau of Driver Lic.,* 559 Pa. 614, 741 A.2d 1264, 1266 (1999). Where the laws of a party state do not provide for offenses which are described in the words contained in Article IV(a)(2) (i.e., "to a degree which renders the driver incapable of safely driving a motor vehicle"), Article IV(c) authorizes the party state to construe the offense described in subsection (a)(2) as identifying offenses in the party state which are "of a substantially similar nature" to (a)(2). *Id.* PennDOT notified Appellant that it was treating his New York DWAI conviction as "equivalent" to a conviction of § 3731 of the Pennsylvania Vehicle Code, 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or a controlled substance), and was suspending his driving privilege for one year, pursuant to 75 Pa.C.S. § 1532(b) (requiring one-year suspension for convictions of § 3731(a), or substantially similar offenses reported under Article III). *See* Letter from Appellee dated October 8, 1999.

Appellant appealed the suspension to the trial court, which sustained the appeal. The trial court relied on the analysis set forth in *Petrovick,* a case involving a license suspension for a conviction under the same New York statute at issue in the instant case. In *Petrovick,* this Court addressed the appropriate analysis for effectuating a reciprocal suspension under Article IV of the Compact. We explained that the Compact did not call for a direct comparison of a Pennsylvania statute to the out-of-state statute. 741 A.2d at 1266. Rather, we determined that the Compact requires a two-prong test: (1) an evaluation of whether there is a Pennsylvania offense which is "of a substantially similar nature" to the provisions of

a degree which renders the driver incapable of safely driving a motor vehicle;

\* \* \*

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

75 Pa.C.S. § 1581, Art. IV(a)(2), (c).

Article IV(a)(2) of the Compact, and then (2) an evaluation of whether there is a New York offense which is "of a substantially similar nature" to Article IV(a)(2). *Id.* at 1267. We concluded, in pertinent part, that the New York offense was not substantially similar to Article IV(a)(2) because the New York DWAI statute punished impairment "to any extent", whereas Article IV(a)(2) required impairment to a degree which rendered the person incapable of safely driving. *See id.* at 1268–69.[3]

In the instant case, the trial court rejected PennDOT's argument that Appellant's license should be suspended pursuant to 75 Pa.C.S. § 1586, a provision which was enacted prior to this court's decision in *Petrovick,* but which became effective after the convictions in *Petrovick* occurred. Section 1586, entitled "Duties of department" states:

> The department shall, for purposes of imposing a suspension or revocation under Article IV of the compact, treat reports of convictions received from party states that relate to driving, operating or being in actual physical control of a vehicle while impaired by or under the influence of alcohol, intoxicating liquor, drugs, narcotics, controlled substances or other impairing or intoxicating substance as being substantially similar to section 3731 (relating to driving under the influence of alcohol or controlled substance). The fact that the offense reported to the department by a party state may require a different degree of impairment of a person's ability to operate, drive or control a vehicle than that required to support a conviction for a violation of section 3731 shall not be a basis for determining that the party state's offense is not substantially similar to section 3731 for purposes of Article IV of the compact.

3. In *Petrovick,* PennDOT invited the court to rely on § 1586, which became effective subsequent to the appellees' conviction dates. We declined to do so, noting that the legislature cannot create retroactive authority by passing clarifying legislation; that the General Assembly did not provide for retroactive application of § 1586; and that "retroactive application of this amendment likely would affect the substantive rights of Appellees...." *Petrovick,* 741 A.2d at 1269.

75 Pa.C.S. § 1586. The trial court found this provision to be "inconsistent with the Compact which sets forth an impairment standard to be followed." Trial Ct. Opin. at 5. Because § 1586 called for a comparison of the states' statutes to each other, instead of a comparison to the provisions of Article IV(a)(2) as mandated by *Petrovick*, the trial court determined that the analysis of § 1586 "is of no consequence." *Id.* at 5–6. The court further reasoned that the Compact focused on the driver's conduct, rather than the name or elements of the particular offense. *Id.* at 6. Adopting § 1586's analysis would result in inequitable treatment among Pennsylvania drivers for the same conduct, a result which would be contrary to the Compact's goal of encouraging uniformity in response to drunk driving. *Id.*[4]

On appeal, the Commonwealth Court reversed. The court acknowledged that *Petrovick* held that New York's DWAI statute was not substantially similar to Article IV(a)(2) due to the differing degree of impairment required by the New York statute. Slip Opin. at 5–6. Nonetheless, the Commonwealth Court reasoned that *Petrovick* was "effectively overruled" by the enactment of 75 Pa.C.S. § 1586, which "expressly rejects such a distinction." *Id.* at 6.

Our review in this matter, which involves pure questions of law, is plenary. *Commonwealth of Penn., Dept. of Transp. v. McCafferty et al.,* 563 Pa. 146, 758 A.2d 1155, 1158 (2000).

■ Appellant argues that the Commonwealth Court erred in relying on § 1586. He contends that § 1586 is irrelevant to an analysis under the Compact because it erroneously directs a comparison between the out-of-state offense and the Pennsylvania offense. Applying the proper analysis set forth in *Petrovick*, New York's DWAI offense is not substantially similar to Article IV(a)(2), and thus Appellant's license suspension must be reversed. Moreover, Appellant argues that the conduct of which he was convicted in New York would not

4. The trial court also found that the New York authorities failed to comply with the reporting requirements of the Compact, thereby precluding PennDOT from sufficiently evaluating Appellant's conduct. That issue is not before us in this appeal.

result in any criminal or civil consequences in Pennsylvania. Alternatively, Appellant asserts that § 1586 is invalid because it purports to unilaterally modify the terms of the Compact, an interstate agreement.

Appellee counters that § 1586 broadened the scope of offenses that Pennsylvania considers to be substantially similar to Article IV(a)(2) of the Compact and to 75 Pa.C.S. § 3731(a), and New York's DWAI offense comes within the scope of those substantially similar offenses. Because § 1586 is remedial legislation designed to further a compelling state interest in highway safety, it should be liberally construed to effectuate its purpose. *See* 1 Pa.C.S. § 1928. Moreover, the legislature furthered the Compact's underlying policy by requiring Pennsylvania-licensed drivers to adhere to the drinking and driving laws of other party states, even if those laws differ from those in Pennsylvania. *See* Article I(b)(1). Appellee contends that § 1586 is permissible legislation which represents the legislature's exercise of power granted under Article IV(c) to define which out-of-state offenses Pennsylvania considers to be substantially similar to offenses delineated under Article IV(a). Finally, Appellee relies on *Squire v. Com., Dept. of Transp., Bureau of Driver Lic.*, 769 A.2d 1224 (Pa.Cmwlth.2001) and *Horvath v. Com., Dept. of Transp., Bureau of Driver Lic.*, 773 A.2d 199 (Pa.Cmwlth.2001), which determined that § 1586 could provide the basis for a reciprocal suspension for a violation of the New York statute.

We agree with Appellee's position. Article IV(c) of the Compact granted the legislature the ability to define which out-of-state offenses Pennsylvania considers to be substantially similar to offenses delineated under Article IV(a). Specifically, Article IV(c) states in pertinent part that "the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article."

The General Assembly took advantage of this grant of authority by passing § 1586. This court has deemed § 1586 to be an "interpretive and administrative provision[ ] related to implementation of the Compact in Pennsylvania." *Har-*

*rington v. Com. of Penn., Dep't of Transp.,* 563 Pa. 565, 763 A.2d 386, 389, n. 4 (2000). Section 1586 directs that for purposes of Article IV, PennDOT shall treat reports of convictions from other states as being substantially similar to 75 Pa.C.S. § 3731, the statutory provision that contains Pennsylvania's provisions relative to impaired driving. Section 1586 also rejects any distinction between the levels of impairment between the out-of-state offense and Pennsylvania's § 3731.

Section 1586 clearly broadens the scope of offenses that Pennsylvania would consider to be "substantially similar" to the offenses delineated in Article IV(a)(2). Under the terms of § 1586, an out-of-state conviction for any level of impaired driving is punishable in Pennsylvania. In contrast, the Compact, as interpreted by *Petrovick,* required a level of impairment to a degree which rendered the operator "incapable of safely driving"; impairment which did not reach this level was not punishable.

Additionally, Article I(b)(1) states that the policy of each party state is to "[p]romote compliance with the laws, ordinances and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles." We think it evident that in enacting § 1586, the legislature sought to promote this policy by sanctioning those Pennsylvania-licensed drivers who violated the impairment laws of other party states, even if those other states' offenses had lower thresholds of impairment than 75 Pa.C.S. § 3731. Thus, the fact that the New York offense permits conviction of a lower level of impairment than 75 Pa.C.S. § 3731 does not preclude Appellant's reciprocal license suspension.

Accordingly, we hold that prior to the effective date of § 1586, *Petrovick* set forth the relevant analysis under the Compact. Section 1586, which was enacted after the Compact, supplants the *Petrovick* analysis and applies to any convictions after the effective date of that provision.

We turn to whether the Commonwealth Court properly ordered the suspension of Appellant's license under § 1586. Given the broad scope of § 1586, we conclude that Appellant's

New York conviction can provide the basis for a reciprocal suspension of his driving privileges in Pennsylvania. The New York offense provides: "No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol." N.Y. Veh. & Traf. Law. § 1192(1). Regardless of the level of Appellant's impairment, PennDOT was justified in suspending Appellant's license as the New York offense is to be deemed "substantially similar" to the provisions of Article IV(a) and 75 Pa.C.S. § 3731.

Appellant also argues that § 1586 impermissibly unilaterally modifies the Compact. Appellant recognizes that courts have acknowledged that unilateral amendments of compacts that have been ratified by Congress may violate Article I, section 10 of the United States Constitution. *See* U.S. CONST. art. I, § 10, cl. 3; *Henderson v. Delaware River Joint Toll Bridge Comm'n*, 362 Pa. 475, 66 A.2d 843 (1949), *cert. denied*, 338 U.S. 850, 70 S.Ct. 94, 94 L.Ed. 520 (1949). Appellant believes, however, that the Driver's License Compact is not reviewable under the United States Constitution because it did not receive the consent of Congress. Appellant seems to be of the opinion that there is some extra-constitutional basis on which we could find that there was an impermissible unilateral amendment. He fails however to develop this claim in any meaningful way. Accordingly, this claim entitles Appellant to no relief. Contrary to Appellant's assertion, this court does not have the power to strike down legislation on a non-constitutional basis.[5,6]

The order of the Commonwealth Court is affirmed.

5. As Appellant has failed to develop this argument, this court in no way opines on whether the Driver's License Compact required the consent of Congress, and if so, whether § 1586 is a unilateral amendment that would be constitutionally impermissible. Parenthetically, we note that it is questionable whether Appellant would have standing to assert that claim. *See Henderson*, 66 A.2d at 849 (stating that plaintiffs lacked standing to object that New Jersey had not formally consented to a purported unilateral amendment by the Pennsylvania General Assembly to a New Jersey–Pennsylvania compact).

6. Mr. Chief Justice Zappala erroneously states that we have deemed this issue to be "waived". Dissenting Slip Opin. at 3. In fact, we have

Former Chief Justice FLAHERTY did not participate in the decision of this matter.

Mr. Chief Justice ZAPPALA files a dissenting opinion.

Mr. Justice NIGRO files a dissenting opinion.

## DISSENTING OPINION

Chief Justice ZAPPALA.

I dissent on two independent grounds. First, the Legislature's passage of 75 Pa.C.S. § 1586 constitutes an unlawful unilateral amendment to the Driver's License Compact, 75 Pa.C.S. § 1581. Second, Section 1586 cannot alter this Court's previous analysis of Article IV of the Driver's License Compact as set forth in *Petrovick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 559 Pa. 614, 741 A.2d 1264 (1999). Accordingly, the order of the Commonwealth Court should be reversed.

The Driver's License Compact is a contractual agreement between thirty-nine states, including Pennsylvania, and the District of Columbia, each of which has enacted the Driver's License Compact into law by statute. *Sullivan v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 550 Pa. 639, 708 A.2d 481, 482 n. 2 (1998). The forty party jurisdictions entered into this interstate contractual agreement with the intention of promoting compliance with each party jurisdiction's driving laws and regulations. *Id.* at 482.

Generally, the authority for states to enter into interstate contractual agreements arises from the Compact Clause of the United States Constitution, which states:

No State shall, without the consent of the Congress, lay any duty of tonnage, keep troops, or ships of war in time of peace, enter into any agreement or compact with another

determined that the issue was not sufficiently developed to establish a non-constitutional basis upon which to declare the legislature's amendment, 75 Pa.C.S. § 1586, null and void. Despite the effort expended in the dissenting opinion (an effort which exceeds that of the Appellant), respectfully, we cannot subscribe to Mr. Chief Justice Zappala's attempt to apply general contract principles to invalidate an act of the General Assembly.

State, or with a foreign power, or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.

U.S. Const. art. I, § 10, cl. 3. Congress provides its consent to compacts by a statute or a joint resolution, which will usually include the compact's terms. Note, *Charting No Man's Land: Applying Jurisdictional and Choice of Law Doctrines to Interstate Compacts*, 11 Harv. L.Rev.1991, 1993 (1998). The terms of an interstate compact ordinarily contain the substantive obligations of the party states, provisions for enactment and amendment and procedures for termination or withdrawal. *Id.* As is the case with all contracts, the Contract Clause of the United States Constitution protects compacts from impairment by the states. *See* U.S. Const. art. I, § 10, cl. 1 ("No state shall ... pass any ... Law impairing the Obligation of Contracts."). Although a state cannot be bound by a compact to which it has not consented, an interstate compact supersedes prior statutes of signatory states and takes precedence over subsequent statutes of signatory states. Jill E. Hasay, *Interstate Compacts in a Democratic Society: The Problem of Permanence*, 49 Fla. L.Rev. 1, 3 (1997).

Additionally, a state may not unilaterally amend, nullify or revoke a compact it has entered into if the compact does not so provide. *Id.; see also West Virginia ex rel. Dyer v. Sims*, 341 U.S. 22, 28, 71 S.Ct. 557, 95 L.Ed. 713 (1951); *Hinderlider v. La Plata River*, 304 U.S. 92, 106, 58 S.Ct. 803, 82 L.Ed. 1202 (1938); *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 725, 9 L.Ed. 1233 (1838).

Read literally, the Compact Clause requires states to obtain the consent of Congress for *any* agreement between states. However, the United States Supreme Court has held that the Compact Clause only requires congressional consent for an interstate compact that "may tend to increase and build up the political influence of the contracting States, so as to encroach upon or impair the supremacy of the United States or interfere with their rightful management of particular subjects placed under their entire control." *United States Steel Corp.*

*v. Multistate Tax Comm'n,* 434 U.S. 452, 467, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978) (quoting *Virginia v. Tennessee,* 148 U.S. 503, 518, 13 S.Ct. 728, 37 L.Ed. 537 (1893)).

The Driver's License Compact was not enacted with the consent of Congress. However, in *Koterba v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 736 A.2d 761 (Pa.Cmwlth.1999), *alloc. denied,* 561 Pa. 703, 751 A.2d 195(Pa.), *cert. denied,* 531 U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000), the Commonwealth Court held that the Driver's License Compact is not the sort of interstate agreement for which the Compact Clause mandates congressional consent. The Commonwealth Court reasoned that, "[n]either the sharing of information among states regarding serious motor vehicle offense convictions nor the regulation by each individual state of the driving privileges of its own citizens threatens the supremacy of the United States." *Koterba,* 736 A.2d at 765.

Appellant claims that the Legislature's passage of Section 1586 constitutes an unlawful unilateral amendment to the Driver's License Compact. The majority asserts that this claim is waived:

> Appellant recognizes that courts have acknowledged that unilateral amendments of compacts that have been ratified by Congress may violate [the Compact Clause]; *Henderson v. Delaware Joint Toll Bridge Comm'n,* 362 Pa. 475, 66 A.2d 843 (1949), *cert. denied,* 338 U.S. 850, 70 S.Ct. 94, 94 L.Ed. 520 (1949). Appellant **believes,** however, that the Driver's License Compact is not reviewable under the United States Constitution because it did not receive the consent of Congress. Appellant seems to be of the opinion that there is some extra-constitutional basis on which we could find that there was an impermissible unilateral amendment. He fails however to develop this claim in any meaningful way.

Majority op. at 8 (emphasis added). However, the text of Appellant's brief does not support the majority's assertion of waiver. Appellant does not "believe" that the Driver's License Compact is not reviewable under the United States Constitution, rather, Appellant

understands that the Driver's License Compact did not receive the consent of Congress and **may** therefore not be reviewable under Article 1, Section 10 of the United States Constitution. However, **the analysis is similar.** As in *Henderson* and in *Aveline [v. Pennsylvania Board of Probation and Parole,* 729 A.2d 1254 (Pa.Cmwlth.1999),] the Compact was a contract entered into between a number of states. The basic premise was to treat offending conduct in the reporting state as it would have been treated in the home state. The Compact permits withdrawal after six months notice. . . . It does not permit unilateral modifications of the Compact . . . .

Brief for Appellant at 15 (emphasis added). I read Appellant's argument as asserting that regardless of whether the Driver's License Compact is controlled by the Compact Clause, the Legislature's passage of Section 1586 without the consent of the party jurisdictions constitutes an unlawful unilateral amendment. Appellant has not waived this argument.

In *Henderson,* this Court contemplated the mechanism for amendment of an interstate compact entered into by Pennsylvania and New Jersey with the consent of Congress. We stated that, "an amendment . . . would be a matter for the contracting States subject, of course, to the congressional consent required by Article 1, Section 10, cl. 3, of the United States Constitution . . . ." *Henderson,* 66 A.2d at 848. While *Henderson* is distinguishable from this case because the compact there required congressional consent, I do not read *Henderson* as standing for the proposition that an amendment to an interstate compact only requires consent of the party states where the compact at issue is controlled by the Compact Clause. The fact that an interstate compact is not controlled by the Compact Clause merely obviates the requirement of consent by Congress to an amendment. It does not obviate the requirement of consent by the party states to an amendment.

Likewise, the fact that the Driver's License Compact is not controlled by the Compact Clause merely obviates the require-

ment of consent by Congress to an amendment to the Driver's License Compact. It does not obviate the requirement of consent by the party jurisdictions to an amendment to the Driver's License Compact.

Furthermore, in its essence, the Driver's License Compact is simply a contract between the forty party jurisdictions that have enacted the Driver's License Compact into law. *See Sullivan*, 708 A.2d at 484 (stating that the "[Driver's License] Compact is a contract between states."). I cannot discern any tenet of contract law which permits the unilateral modification of a contract by one of the contracting parties in the absence of specific language in the contract authorizing unilateral modification. While the Driver's License Compact explicitly contemplates and authorizes a mechanism for withdrawal, *see* Section 1581, Article IX (titled "Entry into Force and Withdrawal"), it neither contemplates nor authorizes a mechanism for amendment, let alone unilateral amendment. Under the interpretive principle of *expressio unius es exclusio alterius*,[1] unilateral amendment of the Driver's License Compact is prohibited due to the lack of any language in the Driver's License Compact authorizing such.

Accordingly, I would hold that the Legislature's passage of Section 1586 constitutes an unlawful unilateral amendment to the Driver's License Compact.

Even assuming arguendo that it was within the Legislature's authority to unilaterally amend the Driver's License Compact with the passage of Section 1586, as aptly stated by the trial court below, Section 1586 "is of no consequence", Trial Ct. op. at 5, in an analysis of Article IV of the Driver's License Compact.

In *Petrovick*, this Court examined the language of Article IV of the Driver's License Compact and held that Article IV does not call for a direct comparison of Pennsylvania's statute to the out-of-state statute. Rather, the Compact

1. "Mention of one thing implies exclusion of another. When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred." *Black's Law Dictionary* 581 (6th ed.1991).

requires a two-pronged test. First, we must evaluate whether there is a Pennsylvania offense which is "of a substantially similar nature" to the provisions of Article IV(a)(2). Second, we must evaluate whether there is a [out-of-state] offense which is "of a substantially similar nature" to Article IV(a)(2). Both prongs must be satisfied before PennDOT can sanction a Pennsylvania citizen for an out-of-state conviction.

741 A.2d at 1266–67; *see also* 75 Pa.C.S. § 1581, Article IV.

Despite this unanimous holding, and directly contrary to such, the majority reasons that the Legislature's passage of Section 1586, "broadens the scope of offenses that Pennsylvania would consider to be 'substantially similar' to the offenses delineated in Article IV(a)(2)." Majority op. at 6. I fail to understand the logic of this assertion.

Section 1586 states that PennDOT

shall, for purposes of imposing a suspension or revocation under Article IV of the compact, treat reports of convictions received from party states . . . as being substantially similar to [75 Pa.C.S. § ] 3731 (relating to driving under the influence of alcohol or controlled substance). The fact that the offense reported to the department by a party state may require a different degree of impairment . . . than that required to support a conviction for a violation of section 3731 shall not be a basis for determining that the party state's offense is not substantially similar to section 3731 for the purposes of Article IV of the compact.

75 Pa.C.S. § 1586.

If the language of Article IV required a direct comparison of Pennsylvania's DUI statute, 75 Pa.C.S. § 3731, to the out-of-state statute, Section 1586 would mandate that the two statutes be considered substantially similar. However, this Court has already specifically determined that the language of Article IV "does not call for a direct comparison of Pennsylvania's statute to the out-of-state statute." *Petrovick,* 741 A.2d at 1266. Rather, Article IV requires a determination of

whether the out-of-state statute is "substantially similar" to Article IV(a)(2). *Id.* at 1267.

The majority asserts that Section 1586 "supplants the *Petrovick* analysis . . . ." Majority op. at 7. Since the language of Article IV remains the same as when this Court interpreted Article IV in *Petrovick,* I fail to understand how the passage of Section 1586 could have "supplanted" the two-pronged test this Court enunciated in *Petrovick.*

I therefore respectfully dissent.

## DISSENTING OPINION

Justice NIGRO.

As I agree with Chief Justice Zappala that Section 1586 did not "supplant" the two-pronged test this Court enunciated in *Petrovick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 559 Pa. 614, 741 A.2d 1264 (1999), and therefore that *Petrovick* continues to control our analysis of Article IV of the Driver's License Compact, I must respectfully dissent.