**BI–STATE DEVELOPMENT AGENCY OF THE MISSOURI–ILLINOIS METROPOLITAN DISTRICT, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

Nos. 71597, 71598.

Supreme Court of Missouri, En Banc.

Dec. 12, 1989.

Alan D. Pratzel, John Fox Arnold, Robert E. McWilliams, Jr., St. Louis, for appellant.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

This is a consolidated appeal from decisions of the Administrative Hearing Commission. The appeal involves refund claims sought from the Department of Revenue for motor vehicle fuel tax and special motor fuel use tax paid by Bi–State Development Agency of the Missouri–Illinois Metropolitan District. The decisions of the Commission are affirmed.

The parties stipulated to the facts. Bi–State Development Agency of the Missouri–Illinois Metropolitan District is a bi-state agency and body, corporate and politic, created in 1949 by virtue of an inter-state compact between the states of Missouri and Illinois. The compact is codified at *§§ 70.370 through 70.440, RSMo 1986,* and at *Ill.Ann.Stat. chapter 127, para. 63r–1, et seq., (Smith–Hurd 1981).* That compact, in turn, has been consented to and approved by joint resolutions of the United States Congress. *Pub.L.No. 81–743, 64 Stat. 568 (Act of August 31, 1950), and Pub.L. 86–303, § 2, 73 Stat. 582.* Bi–State was created for the "faithful cooperation in the future planning and development of the bi-state metropolitan district. . . ." *§ 70.-370.*

Article III of the Bi–State charter sets forth the powers accorded Bi–State. Paragraph 8 of the article provides for the exercise of such additional powers as shall be conferred upon the agency by the legislatures of both states or by act of Congress. By a 1959 amendment, the states authorized Bi–State to operate and maintain passenger transportation facilities. *Section 70.373(1).* Pursuant to the compact, Bi–State owns motor vehicles and buses and provides public mass transportation to the St. Louis metropolitan area, which includes the City of St. Louis, the counties of St. Charles, St. Louis, and Jefferson in Missouri, and the counties of Madison, St. Clair, and Monroe in Illinois.

In 1981 the Illinois Department of Revenue determined that Bi–State was exempt from the Illinois Motor Fuel Tax "as a municipal corporation, which owns and operates a local transportation system for public service in Illinois." Bi–State has not previously paid, nor does it currently pay, to the State of Illinois the types of motor fuel taxes at issue here.

The State of Missouri imposes a motor vehicle fuel tax on gasoline, *§§ 142.010 to 142.350,* and a special motor fuel use tax on diesel and other fuels, *§§ 142.362 to 142.-621 (§§ 142.382, 142.392, 142.402, 142.519 and 142.581* repealed by L.1988, H.B.No. 1629, § A, eff. Jan. 1, 1989). To become licensed as a distributor of motor fuels in Missouri, Bi–State provided to the Department of Revenue a surety bond pursuant to the requirements of *§ 142.070.* Pursuant to the requirements of *§ 142.462,* and to become licensed as a special fuel user in the State of Missouri, Bi–State provided to the Department additional surety bonds. For the period of December 1978 through November 1983, Bi–State paid the Director $72,470.37 in motor fuel taxes. For the periods December 1980 through November 1983 and January 1984 through March 1987, Bi–State paid the Department $1,231,-053.01 and $1,258,512.46, respectively, in special fuel taxes.

Bi–State made demand for refunds in the amounts of $72,470.37 in motor fuel taxes

and $1,231,053.01 and $1,258,512.46 in special fuel taxes, for refund and return of the bond deposited with the department by Bi–State, and for a determination by the department that Bi–State is exempt from the payment of the special motor fuel use taxes. The department denied Bi–State's refund claims. Bi–State timely filed a complaint with the Commission to appeal the department's denial of Bi–State's refund claims and was again denied relief.

As its first point, Bi–State asserts that the State of Missouri has imposed an impermissible burden on the compact through its unauthorized, unilateral act of imposing the motor fuel and special fuel taxes.

 Both parties agree that one party to an interstate compact may not enact legislation that would impose burdens upon the compact absent the concurrence of the other signatories. *Kansas City Area Transportation Authority v. State of Missouri*, 640 F.2d 173, 174 (8th Cir.1981). The parties also agree that "[i]t is within the competency of a State, which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact. *Id., citing Henderson v. Delaware River Joint Toll Bridge Comm'n*, 362 Pa. 475, 66 A.2d 843, 849, *cert. denied*, 338 U.S. 850, 70 S.Ct. 94, 94 L.Ed. 520 (1949).

 The parties disagree, however, as to the manner in which the issue in this case is to be framed. Bi–State characterizes the question as one of unilateral imposition of taxes. The director, on the other hand, contends that Illinois has unilaterally waived a tax to which it may be entitled and it is Illinois' waiver that has prompted Bi–State to seek equivalent treatment in Missouri. The director's position is persuasive.

Citing cases from other jurisdictions whose holdings rest upon reasoning much the same as that of *Kansas City Area Transportation Authority v. State of Missouri, supra*, Bi–State suggests that the provisions of the compact demonstrate that the States of Missouri and Illinois intended

that the states should act together to expand or limit the power or authority of the agency. No one would disagree; this premise underlies formation of compacts. From discussion of the appropriate genesis of Bi–State's powers and authority, however, Bi–State leaps to submit that the State of Illinois must concur in or approve Missouri's power to impose fuel taxes upon Bi–State. A different charter coupled with a different chronology might permit such a conclusion. Here, however, logic does not support the leap. Missouri's fuel tax provisions were existent prior to enactment of the compact. 1925 Mo.Laws 282, amended, 1925 Mo.Laws 255. 1941 Mo.Laws 448. Bi–State so concedes. Illinois is authorized to impose similar taxes. *Ill.Ann.Stat., ch. 120, para. 417, et seq., (Smith–Hurd 1974)*. While the terms of the Bi–State charter grant limited specific exemptions from certain other taxes, *§ 70.375*, no compact provision relieves Bi–State of payment of motor fuel and special fuel taxes. The State of Missouri, therefore, has not unilaterally imposed a burden upon the compact.

 As its second point on appeal, Bi–State makes two separate claims for political subdivision status through which to establish exemption. Bi–State claims first that it is exempt from the imposition of special fuel taxes in that it is a political subdivision of the State of Missouri for which a narrow special fuel tax exemption was provided in *§ 142.382.1*, repealed by L.1988, H.B. No. 1629, § A, eff. Jan. 1, 1989, which read:

> No tax shall be imposed with respect to special fuel placed in supply receptacles of vehicles and equipment not required to be licensed under the provisions of chapter 301 RSMo....

*Section 301.260.2*, in turn, provides:

> Motor vehicles used as ambulances, patrol wagons and fire apparatus, owned by any municipality of this state, shall be exempt from all of the provisions of sections 301.010 to 301.440 while being operated within the limits of such municipality ...; and all other motor vehicles owned by municipalities, counties and

*other political subdivisions* of the state shall be exempt from the provisions of sections 301.010 to 301.440 requiring registration, proof of ownership and display of number plates.... (emphasis added)

Bi–State acknowledges an apparent problem in that the term " 'other political subdivision,' as used in this article, shall be construed to include townships, cities, towns, villages, school, road, drainage, sewer and levee districts, and any other public subdivision, public corporation or public quasi-corporation having the power to tax." *Mo. Const., art. X, § 15.* Bi–State concedes that it does not have, nor has it ever had, the power to tax. Bi–State argues, however, that, under the "law of the union doctrine" the interpretation of the Bi–State compact is governed by federal law and, hence, the State of Missouri's definition of "political subdivision" has no application and the power to tax is irrelevant. The law of the union doctrine provides that "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." *Cuyler v. Adams,* 449 U.S. 433, 440, 101 S.Ct. 703, 708, 66 L.Ed.2d 641 (1981). Under federal law, which Bi–State contends should prevail, the power to tax is not a prerequisite to the status of political subdivision. *Commissioner of Internal Revenue v. Shamberg's Estate,* 144 F.2d 998, 1004–05 (2nd Cir.), *cert. denied,* 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 631 (1944).

The question of whether a political subdivision must in all instances have the power to tax is not before the Court in this case. Application of the law of the union doctrine, moreover, is limited to cases in which state law conflicts with federal law. *See Bush v. Muncy,* 659 F.2d 402, 410 (4th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982), *citing, Delaware River Joint Toll Bridge Comm'n v. Colburn,* 310 U.S. 419, 429–30, 60 S.Ct. 1039, 1041–42, 84 L.Ed. 1287 (1940). As a consequence, Bi–State's argument fails. The language of Bi–State's charter does not designate Bi–State as a "political subdivision" of the State of Missouri; thus, there is no conflict between the Bi–State compact and Missouri law. Further, no conflict exists between federal and state law with respect to the imposition of the special fuel tax because the compact does not prohibit such taxation.

■ Bi–State compares and relies heavily upon an unappealed case before the Administrative Hearing Commission, *Kansas City Area Transit Authority v. Director of Revenue,* RV–81–0529, May 24, 1983 ("*KCATA*"). Prior decisions of the Commission are of no precedential value to appellate courts. *Burke & Sons Oil v. Director of Revenue,* 757 S.W.2d 278, 280 (Mo.App.1988). Without deciding the KCATA case, it suffices to declare that the comparison of cases is not persuasive. Although the legal authority and public purpose of KCATA closely resemble those of Bi–State, the language creating the KCATA specifically designates KCATA as "[an entity] which shall be a body corporate and politic and a political subdivision of the States of Missouri and Kansas." *§ 238.-010.* Observing that the KCATA charter explicitly designated KCATA a "political subdivision," the Commission applied the law of the union doctrine to adopt the federal definition of "political subdivision" and determined KCATA exempt from motor fuel and special fuel taxes pursuant to *§§ 301.260* and *142.382.*

The holding of *KCATA* rested firmly in the legislature's having expressly designated KCATA as a political subdivision. Although perhaps an anomaly, the legislature has not conferred upon Bi–State the same status. The reasoning of *KCATA* does not apply. Bi–State is, consequently, subject to the licensing requirements of *Chapter 301* and the special fuel taxes in *§ 142.362.*

Bi–State alternatively contends that, even if state law rather than federal law controls, Bi–State is exempt from payment of special fuel taxes in that a "body corporate and politic" is equivalent to a political subdivision of the State of Missouri pursuant to *State ex rel. Trimble v. Ryan,* 745

S.W.2d 672 (Mo. banc 1988). This Court in *Trimble,* in *dictum,* observed that the distinction between the terms "public entity" and "political subdivision" was irrelevant to the determination of whether Bi–State is a public entity entitled to sovereign or governmental tort immunity as it existed prior to September 12, 1977. *Id.* at 674 n. 2; *see §§ 537.600, et seq., RSMo* 1986.

Reliance on *Trimble* is misplaced. *Trimble* was preceded by *St. Louis County Transit Co. v. Division of Employment Security,* 456 S.W.2d 334 (Mo.1970), and *Kansas City Area Transportation Authority v. Ashley,* 478 S.W.2d 323 (Mo. 1972), both of which held that the statutes creating Bi–State and the KCATA did not create a distinct governmental unit for purposes of appellate jurisdiction. In *St Louis County Transit,* this Court reasoned that for an entity to be termed a " 'political subdivision' ..., there must be such an exercise of governmental functions as would provide for a separate and distinct governmental unit." *St. Louis County Transit,* 456 S.W.2d at 337, *citing, Harrison and Mercer County Drainage District v. Trail Creek Township,* 317 Mo. 933, 297 S.W. 1 (1927). The Court cited factors such as levy and collection of taxes, election of officers, and definition of powers and duties as being evidence of such a separate and distinct unit of government. This Court found no such incidents of an exercise of governmental functions as to bring Bi–State within the designation of "political subdivision." Bi–State is not a separate and distinct governmental unit. *Id.*

Two years later this Court addressed a similar question with respect to the Kansas City Area Transportation Authority ("KCATA"), whose charter, unlike Bi–State's charter, specifically includes the designation "political subdivision." Despite the legislature's actual use of the words "political subdivision," this Court held that the jurisdictional language "political subdivision" in the Missouri Constitution did not apply to the KCATA because the statute creating the KCATA does not delegate governmental functions as would constitute that agency a governmental unit requiring this Court's jurisdiction of suits involving the KCATA as a party. *Ashley,* 478 S.W.2d at 324.

Judge Blackmar, in his dissent in *Trimble,* agreed with the majority that *St. Louis County Transit* did not directly rule the question of Bi–State's entitlement to sovereign immunity. "What it shows, however, is that we recognized that Bi–State was a new kind of agency, not readily fitted into existing concepts such as 'political subdivision.' " *Trimble,* 745 S.W.2d at 677 (Blackmar, J., dissenting). The issues confronted in *Trimble* involved considerations quite separate from those that are now before this Court. It is clear that public entities can be political subdivisions for some purposes and not for others. *Id.* at 675. The prior holdings of this Court consequently provide no support for Bi–State's argument, and the legislature has not conferred political subdivision status on Bi–State. Bi–State's appeal for political subdivision status in this case therefore fails.

The decisions of the Administrative Hearing Commission are affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS, and BILLINGS, JJ., and CLARK, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.