**BARKET, LEVY & FINE, INC., Appellant,**

v.

**ST. LOUIS THERMAL ENERGY CORPORATION, a corporation; Bi-State Development Agency of the Missouri-Illinois Metropolitan District, Appellees.**

**No. 90–2266EM.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1991.

Decided Nov. 7, 1991.

ments. *Elvgren Paint Supply Co. v. Benjamin Moore & Co.,* No. 3–89–CIV–465, slip op. at 8 (D.Minn. Oct. 26, 1990) (order).

Mark D. Hirschfeld, Clayton, Mo., argued, for appellant.

Jeffrey J. Lowe and Thomas M. Newmark, St. Louis, Mo., argued (Mark J. Rubinelli and David W. Harlan, J. Bennett Clark and Cawood K. Bebout, St. Louis, Mo., on the briefs), for appellees.

Before FAGG, Circuit Judge, SNEED,[*] Senior Circuit Judge, and LOKEN, Circuit Judge.

FAGG, Circuit Judge.

Barket, Levy & Fine, Inc. (Barket) appeals the dismissal of its civil rights action against Bi–State Development Agency of the Missouri–Illinois Metropolitan District (Bi–State) and St. Louis Thermal Energy Corporation (Thermal). The district court found Bi–State is an arm of the states of Missouri and Illinois entitled to immunity under the Eleventh Amendment, and thus concluded Bi–State is not a "person" subject to liability under 42 U.S.C. § 1983. The district court extended this immunity to Thermal as Bi–State's agent, and Barket does not contest this extension on appeal. We reverse and remand to the district court for further proceedings.

Missouri and Illinois entered into a compact creating a single interstate agency to coordinate regional planning and development of the Bi–State Metropolitan Development District (the district). Mo.Rev.Stat. § 70.370 (1986); Ill.Rev.Stat. ch. 127, ¶ 63r–1 (1989) (identical compact provisions). The district is geographically limited to the city of St. Louis, the Missouri counties of St. Louis, St. Charles, and Jefferson, and the Illinois counties of Madison, St. Clair, and Monroe. Mo.Rev.Stat. § 70.370 art. II. Bi–State consists of ten commissioners who reside within the district. *Id.* art. IV.

Bi–State has a significant measure of autonomy. To develop the district, the compact gives Bi–State "all necessary and appropriate powers" except the power to

[*] The HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

**1086**

tax. *Id.* art. VI. Bi–State can buy and sell land, facilities, and equipment, borrow money, issue bonds, condemn property, enter into contracts on its own behalf, and sue and be sued on its contracts. *See id.* § 70.373; Ill.Rev.Stat. ch. 127, ¶ 63s–9.

Bi–State owns buses and provides public mass transportation in the St. Louis metropolitan area. *Bi–State Dev. Agency v. Director of Revenue,* 781 S.W.2d 80, 81 (Mo. 1989) (en banc). Bi–State makes plans to coordinate the district's "streets, highways, parkways, parking areas, terminals, water supply and sewage and disposal works, recreational and conservation facilities and projects, [and] land use pattern." *Id.* § 70.370 art. III(2). The compact also authorizes Bi–State to develop facilities for the conversion of refuse to energy in the St. Louis area. *Id.* § 70.373.2; Ill.Rev.Stat. ch. 127, ¶ 63s–9, § 1(2). Under this authority, Bi–State acquired the St. Louis steam distribution system and retained Thermal to operate the system. *See generally Love 1979 Partners v. Public Serv. Comm'n,* 715 S.W.2d 482 (Mo.1986) (en banc). Barket owns a commercial building in downtown St. Louis that purchases the steam.

Barket filed this lawsuit asserting Bi–State and Thermal violated Barket's equal protection rights under color of state law by charging two different rates for steam and by arbitrarily granting departures from the two rates. Because the district court concluded Bi–State and Thermal are not subject to liability under section 1983, the district court did not decide the merits of Barket's equal protection claim.

 The parties do not dispute the controlling principles. "Section 1983 provides a cause of action against 'person[s]' only." *Deretich v. Office of Admin. Hearings,* 798 F.2d 1147, 1154 (8th Cir.1986). An agency exercising state power is not a "person" subject to suit under section 1983 if the agency is entitled to the state's sovereign immunity under the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). To decide whether the Eleventh Amendment protects a bistate agency, we examine the

"nature of the entity created by state law." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The Eleventh Amendment protects a bistate agency if the agency is an arm of the compacting states, but not if the agency is comparable to a local governmental entity like a county or municipality. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979) (footnote omitted). We cannot extend the Eleventh Amendment's protection to a bistate agency unless we have "good reason to believe that the [compacting] [s]tates structured the new agency to enable it to enjoy the special constitutional protection of the [s]tates themselves." *Id.*

There is no litmus test to determine whether a bistate agency is more like an arm of the compacting states or more like a local governmental entity. Instead, courts decide the question on the facts of each case by considering several criteria: (1) whether the compacting states characterize the agency as an arm of the compacting states or as a local governmental entity; (2) whether the compacting states fund the agency; (3) whether the compacting states are financially responsible for the liabilities and obligations the agency incurs; (4) whether the agency's commissioners are appointed by the compacting states or by local governments; (5) whether the functions the agency performs are traditionally state or municipal; and (6) whether the compacting states can veto the agency's actions. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,* 819 F.2d 413, 414 (3d Cir.) (listing factors considered in *Lake Country* ), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987); *see also Lake Country,* 440 U.S. at 401–02, 99 S.Ct. at 1177–78; *Feeney v. Port Auth. Trans–Hudson Corp.,* 873 F.2d 628, 630–31 (2d Cir.1989), *rev'd on other grounds,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990); *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.) (en banc), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). Although none of the criteria are

conclusive, two other circuits have stated the most important criterion is whether the compacting states are financially responsible for judgments against the agency. *See Feeney,* 873 F.2d at 631; *Fitchik,* 873 F.2d at 659–60. We now consider each of the criteria in turn.

First, state law treats Bi–State like a county or municipality. The compact characterizes Bi–State as "a body corporate and politic," Mo.Rev.Stat. § 70.370 art. III, which indicates Bi–State is a municipal corporation subject to suit under section 1983. *See Port Auth.,* 819 F.2d at 415; *see also Feeney,* 873 F.2d at 631. The compact provides Bi–State's property possesses the same status as property belonging to cities for the purpose of state taxation. Mo.Rev. Stat. § 70.375; Ill.Rev.Stat. ch. 127, ¶ 63s– 10. Bi–State is subject to Missouri's motor fuel and special fuel taxes. *Bi–State Dev. Agency v. Director of Revenue,* 781 S.W.2d 80, 84 (Mo.1989) (en banc). Furthermore, the Missouri legislature characterizes Bi– State as a municipal corporation for the purpose of common law immunity. *See* Mo.Rev.Stat. § 537.600.4 (Supp.1990); *State ex rel. Trimble v. Ryan,* 745 S.W.2d 672, 674 (Mo.1988) (en banc). Similarly, an Illinois Appellate Court characterized Bi– State as a local public entity under the Illinois tort immunity act. *Grady v. Bi– State Dev. Agency,* 151 Ill.App.3d 748, 104 Ill.Dec. 427, 429, 502 N.E.2d 1087, 1089 (1986). Although the Missouri legislature assigned Bi–State to the Missouri Department of Transportation, Mo.Rev.Stat. § 226.007.2 (1986), this falls far short of conferring agency status on Bi–State. *See Fitchik,* 873 F.2d at 662, 664 (holding entity created by state transportation act was not an arm of the state).

Second, the compact makes no specific provision for state funding of Bi–State. Bi–State is self-funding. The compact authorizes several methods for Bi–State to generate operating revenue. Bi–State has no taxing power, Mo.Rev.Stat. § 70.370 art. VI, but can collect fees and issue revenue bonds, *id.* art. III(3)–(4). In addition, Bi– State can "receive for its lawful activities any contributions or moneys appropriated by municipalities, counties, state or other political subdivisions or agencies[,] or by the federal government or any agency." *Id.* art. III(5). Under this provision, Bi– State receives local sales tax money for the operation of the St. Louis public bus system. *See* Mo.Rev.Stat. §§ 94.600–.655 (1986); Op.Mo.Att'y Gen. No. 13 (1987). We agree with the district court that the compact's contemplation of local funding suggests Bi–State is not an arm of Missouri and Illinois. *See Port Auth.,* 819 F.2d at 416.

Third, the compact does not state or even suggest that Missouri and Illinois are responsible for judgments against Bi–State. Indeed, Bi–State concedes it would pay any judgment from its own revenues, but argues Missouri and Illinois might appropriate money if Bi–State exhausts its funds. The possibility of voluntary appropriation of state funds, however, does not trigger sovereign immunity. *Fitchik,* 873 F.2d at 661. *Cf. Port Auth.,* 819 F.2d at 416 (compact provided "states shall appropriate" money when port authority's funds depleted). In addition, Bi–State is partially self-insured and employs an insurance agency to administer its liability program. Op.Mo.Atty's Gen. No. 13 (1987); *see Fitchik,* 873 F.2d at 660–61. The Supreme Court has extended the Eleventh Amendment's protection to agencies exercising state power "to protect the state treasury from liability that would have [ ] essentially the same practical consequences as a judgment against the [s]tate itself." *Lake Country,* 440 U.S. at 400–01, 99 S.Ct. at 1177. Because Missouri and Illinois are not liable for judgments against Bi–State, there is no policy reason for extending the states' sovereign immunity to Bi–State. *See id.* The district court did not consider the liability factor.

Fourth, the Governors of Missouri and Illinois appoint their state's share of Bi– State's commissioners. Mo.Rev.Stat. § 70.-380; Ill.Rev.Stat. ch. 127, ¶ 63s–1. We agree with the district court that this power of appointment suggests Bi–State is an arm of Missouri and Illinois. Missouri's Governor, however, must select Missouri's commissioners from a panel of three nomi-

nees selected alternately by the mayor of the city of St. Louis and the county executive of St. Louis county. Mo.Rev.Stat. § 70.385.

Fifth, Bi–State performs primarily traditional municipal functions. Bi–State's most prominent operation is the St. Louis public bus system. Although the facilitation of transportation is usually a state function, Bi–State's functions are geographically limited to the St. Louis area. *See Feeney*, 873 F.2d at 631. Additionally, the operation of utilities and land use planning are traditionally municipal functions. *See Port Auth.*, 819 F.2d at 417. The district court did not consider Bi–State's functions.

Sixth, Missouri and Illinois reserved the right to provide for the exercise of veto power by each state's Governor over any action of the respective state's commissioners. Mo.Rev.Stat. § 70.370 art. V. In addition, Bi–State is required to provide an annual report to the Governors of Missouri and Illinois detailing its operations and transactions. *Id.* art. III. The states also have the right to approve Bi–State's development plans, *id.*, and rules and regulations, *id.* art. V. Like the district court, we recognize this factor suggests Bi–State is an arm of the compacting states. The states' control over Bi–State, however, is not unlike the control states have over counties. *See Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 1876–77, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring).

On balance, we believe Bi–State is more like a local governmental entity than an arm of Missouri and Illinois. State law characterizes Bi–State as a local public body. Much like a county, Bi–State's object is to plan, develop, and engage in proprietary functions in a defined region with local governance, for the common good of the communities within the region. The compact does not identify Bi–State as an arm of the states or grant Bi–State sovereign immunity. Although Missouri and Illinois retain control over Bi–State's actions, Missouri and Illinois are not compelled to fund Bi–State. Significantly, nothing ob-

ligates Missouri and Illinois to satisfy Bi–State's liabilities and obligations.

Based on the Governors' power to appoint Bi–State's commissioners, the states' right to approve development plans, and the states' retention of the right to grant the Governors veto power, the district judge concluded Bi–State is an arm of Missouri and Illinois. After we heard appellate arguments in this case, another federal district judge using similar analysis reached the same conclusion. *Walker v. Bi–State Dev. Agency*, 763 F.Supp. 409, 410–11 (E.D.Mo.1991). Neither judge, however, considered that Missouri and Illinois are not liable for judgments against Bi–State. *See id.*

We conclude Bi–State has not given us good reason to believe Missouri and Illinois intended Bi–State to enjoy sovereign immunity under the Eleventh Amendment. Thus, Bi–State is subject to suit under 42 U.S.C. § 1983. Because the district court did not reach the merits of Barket's equal protection claim, we have no record on Barket's factual assertions of arbitrary departures from the dual rate structure. We are thus unable to decide the merits of Barket's equal protection claim. Accordingly, we reverse the district court's dismissal of Barket's civil rights complaint and remand to the district court for further proceedings.