Docket No. 109137.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

BRIAN T. HUBBLE, Appellee, v. BI-STATE DEVELOPMENT
AGENCY OF THE ILLINOIS-MISSOURI METROPOLITAN
DISTRICT, d/b/a Metro and Bi-State, a/k/a Bi-State Development
Agency, Appellant.

*Opinion filed September 23, 2010.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, Brian Hubble, brought a personal injury action in the
circuit court of St. Clair County against defendant, Bi-State
Development Agency of the Illinois-Missouri Metropolitan District,
doing business as Metro or Bi-State, also known as Bi-State
Development Agency (hereafter Bi-State or Metro). Bi-State moved
to dismiss the action, asserting that plaintiff filed his complaint
outside of the applicable statute of limitations (735 ILCS
5/2–619(a)(5) (West 2006)). The circuit court denied Bi-State's
motion to dismiss, but certified for interlocutory appeal a question of
law asking whether Bi-State is a "local public entity" as defined by
the Local Governmental and Governmental Employees Tort

Immunity Act (Tort Immunity Act or Act) and thereby subject to its one-year statute of limitations (745 ILCS 10/1–101 *et seq*. (West 2006)). A divided panel of the appellate court answered the certified question in the negative. 393 Ill. App. 3d 1016.

The case is now before this court on a certificate of importance granted by the appellate court (Ill. Const. 1970, art. VI, §4(c); 155 Ill. 2d R. 316). We reverse the judgment of the appellate court and the order of the circuit court, and remand the cause to the circuit court with directions to dismiss plaintiff's complaint.

## I. BACKGROUND

On September 13, 2005, a Metro bus owned and operated by Bi-State collided with plaintiff's automobile at the intersection of Illinois Highway 159 and F Street in Belleville. On March 1, 2007, plaintiff filed a complaint against Bi-State alleging that the Metro bus driver was negligent and that Bi-State was vicariously liable based on the doctrine of *respondeat superior*.[1] Illinois has a two-year general statute of limitations for personal injury actions (735 ILCS 5/13–202 (West 2006)), and plaintiff filed his complaint within that period.

Bi-State moved to dismiss plaintiff's complaint pursuant to section 2–619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(5) (West 2006)). In its supporting memorandum, Bi-State explained that it is a body corporate and politic created by a congressionally approved interstate compact between Illinois and Missouri (hereafter Compact). The Compact also created the Bi-State Metropolitan District, which consists of the City of St. Louis, Missouri, and the Missouri counties of St. Louis, St. Charles, and Jefferson, and the Illinois counties of Madison, St. Clair, and Monroe (hereafter District). 45 ILCS 100/0.01 *et seq*. (West 2006); Mo. Ann. Stat. §70.370 (West 2004); Pub. L. No. 81–743, 64 Stat. 568. The two states authorized Bi-State, among other activities, to own and operate buses and passenger transportation facilities. Pursuant to the Compact, Bi-State provides public mass transportation throughout the

---

[1] The complaint contained a separate negligence count against the bus driver. However, on April 30, 2007, plaintiff voluntarily dismissed the bus driver from the case.

District. 45 ILCS 110/0.01 *et seq*. (West 2006); Mo. Ann. Stat. §70.373 (West 2004); Pub. L. No. 86–303, §2, 73 Stat. 582. Bi-State contended that it is a "local public entity" under the Tort Immunity Act, which provides for a one-year statute of limitations. 745 ILCS 10/8–101(a) (West 2006). Bi-State argued that plaintiff's complaint was time-barred under section 8–101 of the Act because plaintiff filed his complaint over one year after the injury.

The circuit court rejected Bi-State's contention and denied Bi-State's motion to dismiss. Bi-State filed a motion for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).[2] The circuit court denied Bi-State's motion. On October 26, 2007, this court entered a supervisory order directing the circuit court to grant Bi-State's motion for an interlocutory appeal and to stay the proceedings pending the outcome of the appeal. Complying with this court's order, the circuit court stayed the proceedings and certified the following question of law for interlocutory appeal: "Whether Bi-State Development Agency is a local public entity as defined by the Local Governmental and Governmental Employees Tort Immunity Act, [citation], and is therefore subject to the one–year statute of limitations set forth in the Act." 393 Ill. App. 3d at 1017.

A divided panel of the appellate court answered the certified question in the negative, concluding that the legislature did not intend to include Bi-State within the meaning of the term "local public entity" as defined in the Tort Immunity Act. 393 Ill. App. 3d at 1023. Justice Spomer disagreed with the court on all material points. 393 Ill. App. 3d at 1033 (Spomer, J., dissenting).

The appellate court granted Bi-State's application for a certificate of importance. See Ill. Const. 1970, art. VI, §4(c). We will refer to additional pertinent background in the context of our analysis of the issues.

---

[2]In addition to its motion for interlocutory appeal, Bi-State filed an answer to plaintiff's complaint. The answer raised, as an affirmative defense, the one-year statute of limitations contained in section 8–101 of the Tort Immunity Act.

## II. ANALYSIS

### A. Preliminary Matters

At the outset, we note what is actually before this court and our standard of review. First, the certificate of importance states that the appellate court "grants a certificate of importance concerning the following question of law for review by the Illinois Supreme Court," and then states the certified question that was presented to the appellate court. However, under Supreme Court Rule 316 (155 Ill. 2d R. 316), the whole case comes before the supreme court and not only a particular issue. *O'Casek v. Children's Home & Aid Society*, 229 Ill. 2d 421, 436 (2008), quoting *People v. Crawford Distributing Co.*, 78 Ill. 2d 70, 73 (1979).

Second, Bi-State moved to dismiss plaintiff's complaint pursuant to section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 2006)). A section 2–619 motion to dismiss admits the legal sufficiency of the plaintiff's claim, but asserts affirmative matter that defeats the claim. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). Among such affirmative matter is that "the action was not commenced within the time limited by law." 735 ILCS 5/2–619(a)(5) (West 2006). When ruling on a section 2–619 motion to dismiss, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. On appeal, review is *de novo*. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 7 (2007); *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004).

### B. "Local Public Entity"

Turning to the merits, a divided panel of the appellate court concluded that plaintiff's complaint was not time-barred pursuant to the Tort Immunity Act. Based on canons of statutory construction, the appellate court determined that Bi-State was not a local public entity within the purview of the Act. We disagree. As we will explain, Bi-State is a "local public entity" within the purview of the Tort Immunity Act, notwithstanding Bi-State's status as an interstate compact entity, and so the one-year statute of limitations provided by section 8–101(a) of the Act (745 ILCS 10/8–101(a) (West 2006)) applies to civil actions against Bi-State. Plaintiff's complaint is therefore time-barred.

We conduct our analysis within a familiar analytical framework. The primary goal of construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of such intent is the statutory language, which must be given its plain and ordinary meaning. A statute is viewed as a whole. Therefore, words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603-04 (2008); *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279-80 (2003). Accordingly, in determining legislative intent, a court may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied and the goals to be achieved, and the consequences that would result from construing the statute one way or the other. *County of Du Page*, 231 Ill. 2d at 604; *Cryns*, 203 Ill. 2d at 280. Further, the canons of statutory construction apply to interstate compacts. 1A N. Singer & J. Singer, Sutherland on Statutory Construction §32:5, at 723 (7th ed. 2009); F. Zimmerman & M. Wendell, The Law and Use of Interstate Compacts 1 (1976) (same); see, *e.g.*, *S&M Investment Co. v. Tahoe Regional Planning Agency*, 911 F.2d 324, 326-27 (9th Cir. 1990).[3]

Section 1–206 of the Tort Immunity Act defines a "local public entity" as follows:

" 'Local public entity' includes a county, township,

---

[3]To the extent that we construe provisions of the Compact, we recognize that the interpretation of a congressionally sanctioned interstate compact presents a question of federal law. *New Jersey v. New York*, 523 U.S. 767, 810-11, 140 L. Ed. 2d 993, 1029-30, 118 S. Ct. 1726, 1750 (1998) (and cases cited therein). That is not to say that state courts lack jurisdiction. Rather, it means only that if the signatory states dispute their respective obligations under a compact, then the United States Supreme Court has the final say. *Ballinger v. Delaware River Port Authority*, 172 N.J. 586, 593, 800 A.2d 97, 101 (2002). State courts exercise concurrent jurisdiction with federal courts in construing interstate compacts. *Reidelberger v. Bi-State Development Agency*, 8 Ill. 2d 121, 123-24 (1956); accord *International Union of Operating Engineers, Local 68 v. Delaware River & Bay Authority*, 147 N.J. 433, 441-42, 688 A.2d 569, 573 (1997).

municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, trustees of schools of townships, treasurers of schools of townships, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, *and all other local governmental bodies*. 'Local public entity' also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as *any not-for-profit corporation organized for the purpose of conducting public business*. It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." (Emphases added.) 745 ILCS 10/1–206 (West 2006).

This court has repeatedly observed that the term "local public entity" is broadly defined. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 512 (2003); *Boyles v. Greater Peoria Mass Transit District*, 113 Ill. 2d 545, 553 (1986); see A. Alstyne, *Governmental Tort Liability: A Decade of Change*, 1966 U. Ill. L.F. 919, 933 (listing, as one of the "significant characteristics" of the Act, that it applies "to every kind of local governmental body"); E. Kionka & J. Norton, *Tort Liability of Local Governments and Their Employees in Illinois*, 58 Ill. B.J. 620, 628 (1970) (same). Illinois courts have widely recognized various public entities as coming within the definition of "local public entity," although those entities were not expressly identified in section 1–206 of the Tort Immunity Act. See, *e.g.*, Carver, 203 Ill. 2d at 512; *Roark v. Macoupin Creek Drainage District*, 316 Ill. App. 3d 835, 839 (2000); *Luciano v. Waubonsee Community College*, 245 Ill. App. 3d 1077, 1083 (1993) (collecting cases).[4]

---

[4]We observe that section 2–101 of the Tort Immunity Act states: "Nothing in this Act affects the liability, if any, of a local public entity *** based on *** [o]peration as a common carrier ***." 745 ILCS 10/2–101(b) (West 2006). In the present case, Bi-State was not operating as a common carrier with respect to plaintiff at the time of the accident since he was not a passenger. See, *e.g.*, *Katamay v. Chicago Transit Authority*, 53 Ill. 2d 27,

The appellate court outlined its analysis as follows:

> "In order for Bi-State to qualify as a 'local public entity,' however, it would have to fit within the general catchall category of 'other local governmental bodies.' To determine whether the legislature intended to include interstate compact agencies within this general catchall category, we must look at the nature and characteristics of interstate compacts generally and of Bi-State specifically and interpret the Tort Immunity Act in light of those characteristics." 393 Ill. App. 3d at 1020-21.

The flaws in the appellate court's analysis begin with its premise. The appellate court stated that Bi-State could qualify as a local public entity only if it fit within the general catchall category of "other local governmental bodies" referenced in section 1–206 of the Tort Immunity Act. 393 Ill. App. 3d at 1020.

The appellate court did not consider whether Bi-State fit within any of the other categories of local public entities listed in section 1–206. Bi-State qualifies as a local public entity because it is a "not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1–206 (West 2006). See *McQueen v. Shelby County*, 730 F. Supp. 1449, 1453 (C.D. Ill. 1990) (construing Act, stating that "the phrase 'any not-for-profit corporation organized for the purpose of conducting public business' is itself a specifically enumerated entity which applies to a particular class of organizations"). Bi-State is a corporation created pursuant to the United States Constitution; Bi-State has no shareholders and is composed of commissioners who are chosen by Illinois and Missouri government officials; Bi-State is funded with public and user fee revenue; and Bi-State operates, *inter alia*, a transit system in the public interest. As such, Bi-State falls within section 1–206 of the Tort Immunity Act, which expressly includes nonprofit public corporations within its definition of "local public entity." 745 ILCS 10/1–206 (West 2006). See *Barnes v. Chicago Housing Authority*, 326 Ill. App. 3d 710, 724-29 (2001) (recognizing resident

---

31 (1972); *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 19 (2010).

management corporation as not-for-profit corporation conducting public business); *Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223, 227-28 (1991) (same; METRA).

Further, significant persuasive authority supports our conclusion that Bi-State is a nonprofit public corporation. The decisions of both federal and state courts may guide our interpretation of compact provisions (see *Remick v. Lopes*, 203 Conn. 494, 498, 525 A.2d 502, 504-05 (1987)), and the courts of signatory states should promote consistency in interpreting an interstate compact, based on comity (see *State ex rel. Ohio Adult Parole Authority v. Coniglio*, 82 Ohio App. 3d 52, 55, 610 N.E.2d 1196, 1198 (1993); *State v. Hill*, 334 N.W.2d 746, 748 (Iowa 1983)), or because those courts are interpreting the same federal law (see *American Sugar Refining Co. of New York v. Waterfront Comm'n of New York Harbor*, 55 N.Y.2d 11, 25-26, 432 N.E.2d 578, 584, 447 N.Y.S.2d 685, 691 (1982)). Federal and Missouri courts have recognized: " 'There is no question that Bi-State operates as a nonprofit corporation in the public interest.' " *Redbird Engineering Sales, Inc. v. Bi-State Development Agency of Missouri-Illinois Metropolitan District*, 806 S.W.2d 695, 698 (Mo. App. 1991), quoting *Ladue Local Lines, Inc. v. Bi-State Development Agency of the Missouri-Illinois Metropolitan District*, 433 F.2d 131, 134 (8th Cir. 1970); accord *Love 1979 Partners v. Public Service Comm'n*, 715 S.W.2d 482, 489 (Mo. 1986) (describing Bi-State as a nonprofit public agency). Bi-State is a local public entity because it is a nonprofit public corporation, which is specifically referenced in section 1–206 of the Tort Immunity Act.

As noted, the appellate court did not consider whether Bi-State fell within the section 1–206 category of nonprofit public corporation. Rather, the appellate court concluded that Bi-State was not a local public entity because it did not fit within the section 1–206 category of "other local governmental bodies." 745 ILCS 10/1–206 (West 2006). We disagree with this conclusion for a number of reasons. Initially, we note that pursuant to the Compact, Bi-State is expressly "a body corporate and politic." 45 ILCS 100/1 (West 2006); Mo. Ann. Stat. §70.370 (West 2004). Further, Bi-State was expressly created to perform public or governmental functions. Bi-State's powers include: (1) planning, constructing, and maintaining bridges, airports, and terminal facilities; (2) making plans for the coordination

of streets and highways; (3) charging and collecting fees; (4) issuing bonds; (5) receiving contributions from local, state, and federal governments; (6) the power to perform all other necessary and incidental functions; and (7) the power to exercise such additional powers as shall be conferred on it by the legislature of either state and concurred in by the legislature of the other state and approved by Act of Congress. Lastly, Bi-State is "local" in that it performs its governmental or public functions within its defined district. See 45 ILCS 100/1 (West 2006); Mo. Ann. Stat. §70.370 (West 2004); Pub. L. No. 81–743, 64 Stat. 568. Thus, in addition to falling within the section 1–206 category of nonprofit public corporation, Bi-State also constitutes a form of "local government body" as referenced in section 1–206 of the Tort Immunity Act and, therefore, a "local public entity" under the Act.

Our conclusion finds support in *Grady v. Bi-State Development Agency*, 151 Ill. App. 3d 748, 750 (1986). There, the appellate court, considering Bi-State's status, relied on the same aforementioned factors to reach a similar conclusion as to Bi-State's status as a local public entity pursuant to section 1–206. Subsequent decisions of the Fifth District have likewise applied the provisions of the Tort Immunity Act to Bi-State. See *Cooper v. Bi-State Development Agency*, 158 Ill. App. 3d 19 (1987); *McClintock v. Bi-State Development Agency*, 228 Ill. App. 3d 382 (1992).

We note, too, that our determination is faithful to the intent of the legislature. Subsequent to *Grady*, decided in 1986, the General Assembly has amended section 1–206 of the Tort Immunity Act six times to include various entities within the statutory definition of "local public entity." 745 ILCS 10/1–206 (West 2006). A court presumes that the legislature amends a statute with knowledge of judicial decisions interpreting the statute. *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 499 (1999); *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458 (1997); *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 388 (1992). In this case, therefore, we presume that the legislature knew of *Grady*'s holding when it amended section 1–206 six times in the past 24 years. The legislature's failure to expressly exclude Bi-State from section 1–206 (see *Bruso*, 178 Ill. 2d at 458-59), or expressly add Bi-State to those already listed (see *Morris*, 187 Ill. 2d at 499; *Grand Jury*, 152

Ill. 2d at 388), indicates legislative acquiescence in *Grady*'s holding. If the legislature intended to exclude Bi-State from the purview of the Tort Immunity Act, it would have done so expressly, as it did with "any entity organized under or subject to the 'Metropolitan Transit Authority Act.' " 745 ILCS 10/2–101(b) (West 2006).

Also, our conclusion is consistent with federal authority. See, *supra*, at B. In *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084 (8th Cir. 1991), the United States Court of Appeals for the Eighth Circuit exhaustively analyzed Bi-State's status to determine whether the agency was entitled to eleventh amendment immunity as an "arm" of either state. The court concluded:

> "On balance, we believe Bi-State is more like a local governmental entity than an arm of Missouri and Illinois. State law characterizes Bi-State as a local public body. Much like a county, Bi-State's object is to plan, develop, and engage in proprietary functions in a defined region with local governance, for the common good of the communities within the region. The compact does not identify Bi-State as an arm of the states or grant Bi-State sovereign immunity. Although Missouri and Illinois retain control over Bi-State's actions, Missouri and Illinois are not compelled to fund Bi-State. Significantly, nothing obligates Missouri and Illinois to satisfy Bi-State's liabilities and obligations." *Barket*, 948 F.2d at 1088.

Clearly, Bi-State is a form of "local government body" as referenced in section 1–206 of the Tort Immunity Act. See F. Zimmerman & M. Wendell, The Law and Use of Interstate Compacts 11 (1976) (stating that interstate compact entities "are public bodies with characteristics similar to those of other governmental organs").[5]

---

[5]Bi-State presents the attenuated argument of the appellate court dissent that Bi-State is a form of "local governmental body," as referenced in section 1–206 of the Tort Immunity Act, based on the definition of "units of local government" in article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, §1) read together with section 2(e) of the Transportation Cooperation Act of 1971 (5 ILCS 225/2(e) (West 2006)). See 393 Ill. App. 3d at 1036 (Spomer, J., dissenting). Our statutory analysis obviates discussion of this constitutional argument. See *Beahringer v. Page*, 204 Ill.

Notwithstanding the above, plaintiff argues that the appellate court here correctly determined that Bi-State's status as an interstate compact entity prevented it from receiving the protections of the Tort Immunity Act. We disagree. Although the appellate court discussed the general nature of interstate compacts and surveyed the provisions of the Compact (393 Ill. App. 3d at 1021-23), the court overlooked dispositive aspects of interstate compacts, including the Compact in the present case, which renders its analysis unpersuasive.

## C. Interstate Compact Principles

The United States Constitution provides mechanisms to address "matters that are clearly beyond the realm of individual state authority but which, due to their nature, may not be within the immediate purview of the federal government or easily resolved through a purely federal response." C. Broun, M. Buenger, M. McCabe & R. Masters, The Evolving Use and the Changing Role of Interstate Compacts: A Practitioner's Guide 1 n.2 (2006).

> "Of all the mechanisms available, none is more formal, more state-focused, more adaptable to collective *state* needs, and perhaps less understood than interstate compacts. Compacts are fundamentally negotiated agreements among member states that have the status of both contract and statutory law. Interstate compacts *** represent the only mechanism in the Constitution by which the states themselves can alter the dynamics of their relationships without running afoul of the authority of the federal government or reordering the federal structure of government. Thus, compacts are singularly important because through a compact, the states can create a state-based solution to regional or national problems and effectively retain policy control for the future." (Emphasis in original.) C. Broun, M. Buenger, M. McCabe & R. Masters, The Evolving Use and the Changing Role of Interstate Compacts: A Practitioner's Guide 2-3 (2006).

Accord F. Zimmerman & M. Wendell, The Law and Use of Interstate Compacts 46 (1976) (stating that "[t]he interstate compact is the most

---

2d 363, 370, 378 (2003) (deciding case on nonconstitutional grounds).

effective medium" for establishment by two or more states of joint entities "to provide and administer joint public works and facilities"); J. Winters, Interstate Metropolitan Areas 12 (1967) (observing that "the increasing awareness of the magnitude of [interstate] metropolitan area problems has been accompanied by the increased use of the compact to solve such problems").

The compact clause of the United States Constitution provides: "No State shall, without the Consent of Congress *** enter into any Agreement or Compact with another State ***." U.S. Const., art. I, §10, cl. 3. Interstate compact entities occupy a significantly different position in our federal system than do the states themselves. The states are separate sovereigns and constituent elements of the Union. In contrast, interstate compact entities typically are creations of at least three distinct sovereigns: two or more states and the federal government. *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 40, 130 L. Ed. 2d 245, 255, 115 S. Ct. 394, 400 (1994). Normally, the "ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates." *Hess*, 513 U.S. at 47, 130 L. Ed. 2d at 260, 115 S. Ct. at 404. However: "As part of the federal plan prescribed by the Constitution, the States agreed to the power sharing, coordination, and unified action that typify Compact Clause creations." *Hess*, 513 U.S. at 41-42, 130 L. Ed. 2d at 256, 115 S. Ct. at 401. Thus, "no one State alone can control the course of a Compact Clause entity." *Hess*, 513 U.S. at 47, 130 L. Ed. 2d at 260, 115 S. Ct. at 404. Once given, congressional consent transforms an interstate compact within this clause into a federal law. One consequence of this transformation is that, unless the compact to which Congress has consented is somehow unconstitutional, no court may order relief inconsistent with its express terms. *Texas v. New Mexico*, 462 U.S. 554, 564, 77 L. Ed. 2d 1, 12, 103 S. Ct. 2558, 2565 (1983).

D. Approbative Legislation

In the present case, plaintiff echos what the appellate court stressed: that Congress's approval of the Compact contained a proviso that prohibits Bi-State from exercising any additional powers "unless and until such power or powers shall have been conferred upon the Bi-State Agency by the legislature of one of the States to the

-12-

compact and concurred in by the legislature of the other and shall have been approved by an Act of Congress." Pub. L. No. 81–743, 64 Stat. 568, 571. The appellate court reasoned:

> "Bi-State's powers are confined by the terms of the compact, and its powers cannot be altered or expanded without the consent of both Illinois and Missouri and approval from Congress. Each state gave up its sovereign right to exclusively control its portion of the District so that Bi-State could operate transportation services within the entire District for the betterment of both states. As a result, neither Illinois nor Missouri may act unilaterally with respect to modifying or expanding Bi-State's powers, duties, or obligations. Bi-State is an autonomous entity that is vested with specific powers and authority to perform specific functions independent from the control of any one state." 393 Ill. App. 3d at 1023.

According to the appellate court, "Missouri and Illinois must enact identical legislation on matters involving Bi-State's powers," which Congress must approve. 393 Ill. App. 3d at 1028. We disagree.

Initially, congressional consent is not necessary "in respect of each and every matter relating to or growing out of a congressionally approved 'compact' or 'agreement' between States." *Henderson v. Delaware River Joint Toll Bridge Comm'n*, 362 Pa. 475, 486, 66 A.2d 843, 849 (1949) (collecting cases). Further, it is true that one party to an interstate compact may not enact legislation that would impose burdens upon the compact absent the concurrence of the other signatory states. However, the converse is widely recognized: "It is within the competency of a State, which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact." *Henderson*, 362 Pa. at 488, 66 A.2d at 849-50, citing *Olin v. Kitzmiller*, 259 U.S. 260, 263, 66 L. Ed. 930, 933, 42 S. Ct. 510, 511 (1922); accord *Kansas City Area Transportation Authority v. Missouri*, 640 F.2d 173, 174 (8th Cir. 1981); *Bi-State Development Agency of the Missouri-Illinois Metropolitan District v. Director of Revenue*, 781 S.W.2d 80, 82 (Mo. 1989); *Roehl Transport, Inc. v. Division of Hearings & Appeals*, 213 Wis. 2d 452, 464, 570 N.W.2d 864, 870 (App. 1997).

In the present case, the appellate court failed to recognize that the express purpose of the Tort Immunity Act "is to protect local public entities and public employees from liability arising from the operation of government. It grants only immunities and defenses." 745 ILCS 10/1–101.1(a) (West 2006). Thus, the Act generally *protects*, rather than burdens, the Compact.

Specifically, section 8–101(a) of the Act requires that a plaintiff commence a civil action for any injury against a local public entity or any of its employees "within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8–101(a) (West 2006). The purpose of the one-year limitation period contained in section 8–101(a) is to encourage early investigation into a claim against a local governmental entity when the matter is still fresh, witnesses are available, and conditions have not materially changed. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 313 (2001); *Saragusa v. City of Chicago*, 63 Ill. 2d 288, 293 (1976). Such an investigation permits prompt settlement of meritorious claims and allows governmental entities to plan their budgets in light of potential liabilities. *Ferguson*, 202 Ill. 2d at 313; *Reynolds v. City of Tuscola*, 48 Ill. 2d 339, 342 (1971). Because a local governmental entity must anticipate that the number of claims made against it will far exceed those brought against a private individual, the provision of an abridged limitations period is reasonable. *Ferguson*, 202 Ill. 2d at 313; *Saragusa*, 63 Ill. 2d at 293. Clearly, the one-year statute of limitations provided by section 8–101(a) of the Tort Immunity Act furthers or supports Bi-State and does not burden it.

### 1. Article IX

However, plaintiff observes, as did the appellate court, that the Tort Immunity Act must be construed as a whole, reasoning that the Act cannot apply to Bi-State because article IX of the Act cannot apply to Bi-State. Article IX concerns the payment of claims and judgments (745 ILCS 10/9–101 *et seq.* (West 2006)). The court noted several provisions. Article IX empowers and directs local public entities to pay tort judgments or settlements for compensatory damages and establishes the procedure therefor. 745 ILCS 10/9–102 (West 2006). Article IX requires local public entities that derive revenue from rates or charges to set such rates, or otherwise provide funds, in an amount sufficient to pay their tort judgments and

-14-

settlements in accordance with article IX and their obligations under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2006)), the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2006)), and the Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2006)). 745 ILCS 10/9–106 (West 2006). Also, article IX allows local public entities to levy taxes upon all taxable property within its territory "for funding expenses relating to tort liability, insurance, and risk management programs." 745 ILCS 10/9–107 (West 2006).

Based on these provisions, the appellate court reasoned that article IX would grant Bi-State additional "powers," or impose upon Bi-State additional "burdens," "duties," or "obligations" that are beyond Bi-State's authority. 393 Ill. App. 3d at 1023-26. The court posited: "Missouri has not consented to these additional powers or duties contained within article IX of the Tort Immunity Act by enacting identical legislation, nor has Congress granted approval. These provisions in article IX of the Tort Immunity Act, therefore, cannot validly apply to Bi-State." 393 Ill. App. 3d at 1025. The court concluded that "the Illinois legislature cannot unilaterally grant additional powers to or place additional burdens on Bi-State without an express concurrence from Missouri and congressional approval." 393 Ill. App. 3d at 1026. The appellate court also concluded that *Grady* was erroneous and refused to follow it. 393 Ill. App. 3d at 1029-31.[6]

The appellate court overlooked the nature of the Tort Immunity Act and misapprehended the effect of article IX on Bi-State. As Justice Spomer explained in his dissent: "Contrary to the majority's assertions, there is nothing in article IX of the Act that is incongruent with the interstate compact which created Bi-State, and no section of article IX modifies Bi-State's powers or imposes additional obligations on Bi-State." 393 Ill. App. 3d at 1036-37 (Spomer, J., dissenting).

Generally, the Tort Immunity Act contains no requirement that a governmental body must possess the power to tax in order to be

---

[6]Based on our previous discussion of *Grady*, we summarily reject plaintiff's contention that *Grady* was erroneously decided.

-15-

classified as a "local public entity." If the legislature intended to restrict the definition of a "local public entity" to those entities authorized to levy taxes, it could have defined a "local public entity" as an entity possessing the authority to tax. However, section 1–206 does not contain such a restriction. *Carver*, 203 Ill. 2d at 514; *McQueen*, 730 F. Supp. at 1454.

Specifically, article IX of the Tort Immunity Act does not confer upon Bi-State the power to levy taxes. Section 9–101(c) of the Act expressly recognizes that not all public entities have the power to levy taxes by defining a "local taxing entity" as "a local public entity that has the power to levy *or have levied on its behalf* taxes or assessments upon property within the territory of the entity." (Emphasis added.) 745 ILCS 10/9–101(c) (West 2006). Likewise, section 9–107 provides that "[a] local public entity *may* annually levy *or have levied on its behalf*" property taxes in an amount sufficient to cover the costs of insurance and judgments against it. (Emphases added.) 745 ILCS 10/9–107(b) (West 2006). Indeed, section 9–107 does not require local public entities to levy those taxes, but simply confers the authority to do so. Further, the Compact itself confers on Bi-State the powers to have taxes levied on its behalf. Article III, paragraph 5, of the Compact provides that Bi-State shall have the power: "To receive for its lawful activities any contributions or moneys appropriated by municipalities, counties, state or other political subdivisions or agencies." 45 ILCS 100/1, art. III (5) (West 2006); Mo. Ann. Stat. §70.370, art. III (5) (West 2004). Accordingly, these sections of article IX are in no way incongruent with the Compact.

Moreover, article III, paragraph 3, of the Compact authorizes Bi-State: "To charge and collect fees for use of the facilities owned and operated by it." 45 ILCS 100/1, art. III (3) (West 2006); Mo. Ann. Stat. §70.370, art. III (3) (West 2004). Consistent with this express authority, the Tort Immunity Act authorizes local public entities that derive revenue from rates or charges to set such rates "in an amount sufficient to pay [their] tort judgments and settlements." 745 ILCS 10/9–106 (West 2006). The appellate court's use of article IX as a means to remove Bi-State from the purview of the Tort Immunity Act was "simply wrong." 393 Ill. App. 3d at 1037 (Spomer, J., dissenting). Nothing about article IX affects our recognition that Bi-

State falls within the definition of "local public entity" as provided in section 1–206.

E. Danger of Absurdity

Curiously, the appellate court stated:

> "We are not asked to determine whether the State of Illinois can unilaterally enact a valid statute of limitations applicable to claims against Bi-State or whether such an enactment requires identical Missouri and Illinois laws along with Congress's approval. Contrary to the dissent's assertion, we take no position on that issue. Our only task is to answer the certified question, and in order to answer that question, we must determine the legislature's intent. For the reasons noted above, our only holding in this decision is that the legislature did not intend to include Bi-State within the Tort Immunity Act's definition of a 'local public entity.' " 393 Ill. App. 3d at 1028-29.

This disclaimer is perplexing. Rather than taking "no position on the issue," the appellate court repeatedly stated that Illinois and Missouri must enact identical legislation on matters involving Bi-State's powers, which must also receive congressional approval. 393 Ill. App. 3d at 1023, 1025, 1026, 1028. In determining "the legislature's intent," the appellate court expressly reasoned that the legislature shared the court's erroneously narrow view of interstate compacts and, accordingly, could not have "intended to sweep Bi-State into the purview of the Tort Immunity Act with the general catchall phrase 'all other local governmental bodies.' " 393 Ill. App. 3d at 1028. As explained above, the appellate court's alleged "nonposition" plainly misconstrues the law of interstate compacts and the Compact in this case.

By overlooking significant aspects of interstate compacts, the appellate court's construction of the Compact was so narrow that it could possibly render an absurd result. "[A] court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result" (*State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 541 (1992)), and will avoid a construction leading to an absurd result, if possible (*City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967)). "In almost

-17-

all instances *** pragmatic accommodations can be made [for an interstate compact entity] which do not strain the letter or the intent of existing statutory or constitutional requirements." F. Zimmerman & M. Wendell, The Law and Use of Interstate Compacts 11 (1976). This is why interstate compact analysis acknowledges persuasive decisions of federal and state courts, and recognizes that courts should promote consistency in interpreting an interstate compact.

Although "[a] definition has yet to be drawn of its precise nature," "the Bi-State Agency is essentially a local government itself." M. Ridgeway, Interstate Compacts: A Question of Federalism 133 (1971). Based on our analysis, and consistent with significant persuasive authority, we hold that Bi-State is a local public entity within the purview of the Tort Immunity Act. Consequently, the Act's one-year statute of limitations applies to civil actions against Bi-State, and plaintiff's complaint is time-barred.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court, and the order of the circuit court of St. Clair County denying Bi-State's motion to dismiss, are reversed, and the cause remanded to the circuit court with directions to dismiss plaintiff's complaint.

*Appellate court judgment reversed;*
*circuit court order reversed;*
*cause remanded with directions.*